# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASSER AL-AULAQI, as personal representative of the estate of ANWAR AL-AULAQI, et al., | |
| Plaintiffs, | No. 1:12-cv-01192 (RMC) |
| v. | |
| LEON E. PANETTA, et al., in their individual capacities, | |
| Defendants. | |

## DEFENDANTS' RESPONSE TO THE COURT'S MAY 22, 2013 ORDER

On May 22, 2013, Attorney General Eric H. Holder, Jr., sent a letter to Senator Patrick J. Leahy addressing Congress's interest in "the Administration's use of lethal force against U.S. citizens" during counterterrorism operations overseas. Ex. 1, May 22, 2013 Letter from Attorney General Holder to Senator Leahy ("AG Letter"), at 1. That letter went on to disclose, at the direction of the President, previously classified information that the United States had "specifically targeted and killed one U.S. citizen, Anwar Al-Aulaqi," and that two other U.S. citizens, Samir Khan and Abdulrahman Al-Aulaqi, whose deaths are also the subject of this lawsuit, were killed in the course of United States counterterrorism operations against al-Qa'ida and its associated forces, although these two individuals were not "specifically targeted by the United States." AG Letter at 1-2.[1] That same day, this Court issued an order asking Defendants to explain "how, if at all," the Attorney General's acknowledgment affects the legal issues in this litigation. May 22, 2013 Minute Order.

---

[1] The Attorney General also disclosed that a fourth U.S. citizen was killed in the course of counterterrorism operations against al-Qa'ida and its associated forces. *Id.* at 2. That death is not the subject of this lawsuit.

Defendants' view is that neither the AG Letter nor President Barack Obama's May 23, 2013 speech at the National Defense University, during which President Obama discussed the targeting of Anwar Al-Aulaqi and the strike against him, has any effect on the present legal posture of this case.[2]

To the extent the Court is referring to the Attorney General's factual acknowledgment of the United States' role in the deaths at issue in this litigation, this disclosure does not affect the Court's consideration of the motion to dismiss. As is required for a motion to dismiss, Defendants accepted *all* of Plaintiffs' well-pled factual allegations as true, albeit solely for the purposes of that motion. *See* Doc. 18, Def.'s Mot. to Dismiss (MTD), at 3 n.2. That includes the allegations that Anwar Al-Aulaqi was specifically targeted and killed in a missile strike, Compl. ¶¶ 23-24, 31, and that Samir Khan and Abdulrahman Al-Aulaqi were also killed in missile strikes by the United States (although the complaint, consistent with the recent disclosures, does not specifically allege that these two individuals were targeted). *See Id.* ¶¶ 31, 35, 37. Moreover, the other factual information about Anwar Al-Aulaqi contained in the AG Letter and the President's Speech—while more detailed than previous public disclosures—is consistent with the factual material as to which Defendants asked this Court to take judicial notice. *Compare* MTD at 2, 9, 37 (discussing statements by the United States regarding Anwar Al-Aulaqi's leadership position within al-Qai'da in the Arabian Peninsula and his involvement in terrorist plots), *with* AG Letter at 2-3 (same).[3]

---

[2] *See* Ex. 2, Tr. of May 23, 2013 Speech by President Obama ("President's Speech"), at 9-10. Because the President's Speech, which came after the Court's order, was referred to in the AG Letter, *see* AG Letter at 5, and also touched on the subject of Plaintiffs' complaint, Defendants discuss that speech as well. *See* President's Speech at 6-11.

[3] Any additional specific facts included in the AG Letter or the President's Speech that either are not alleged in the complaint or might be contrary to Plaintiffs' well-pled allegations would not technically be before the Court, given the current procedural posture, unless Plaintiffs seek and

Thus, neither the AG Letter nor the President's Speech changes the case's legal posture or the fundamental arguments in favor of dismissal. Specifically, Defendants moved to dismiss on three main bases: (1) Plaintiffs' claims raise non-justiciable political questions, *see* MTD at 5-21; (2) special factors counsel against inferring a damages remedy, *id.* at 21-28; and (3) Defendants are entitled to qualified immunity, *id.* at 29-45. Although the AG Letter and the President's Speech do not alter these arguments in any material sense, they underscore certain points made by Defendants in support of dismissal.

For example, Defendants explained that the political question doctrine applies to Plaintiffs' claims in part because determining whether "means short of lethal force" were "reasonably" available during the operations at issue, Compl. ¶ 24, would require this Court to evaluate "[m]yriad military, intelligence, and foreign policy considerations," a task for which the Judiciary is ill-suited. MTD at 16. Similarly, President Obama gave examples of some of those "myriad" considerations in discussing why as a general matter, despite the United States' "strong preference" for capture over the use of lethal force, missile strikes using remotely piloted aircraft may in certain circumstances be employed where the option of capture "is foreclosed." President's Speech at 5-6, 8 (stating that deploying ground troops poses "profound risks to our troops and local civilians," "may trigger a major international crisis," and may "unleash a torrent of unintended consequences" that are "difficult to contain"). Defendants also noted that a finding of liability would show a "lack of the respect due" to the political branches. *See* MTD at 17-21. Both the Attorney General and the President stated that Congress was briefed about using lethal force against Anwar Al-Aulaqi in advance of the strike targeting him. *See* AG Letter at 2, 4;

---

this Court grants leave to file an amended complaint. Defendants' counsel contacted Plaintiffs' counsel on May 24, 2013, to ask whether Plaintiffs intend to seek leave to amend their complaint in light of the AG Letter and the President's Speech. Plaintiffs' counsel responded that Plaintiffs do not plan to seek leave to amend their complaint at this time.

President's Speech at 10. The President also said: "Not only did Congress authorize the use of

force, it is briefed on every strike that America takes. Every strike." President's Speech at 9. The

considerations underlying the use of remotely piloted aircraft for missile strikes, as explained by

the President, coupled with the active involvement of the political branches in the matters raised

by this suit reinforce Defendants' showing that Plaintiffs' complaint raises non-justiciable

political questions.

Additionally, the above statements by the Attorney General and the President bolster

Defendants' argument that separation of powers concerns counsel against creating a *Bivens*-type

remedy. *See* MTD at 21-24. Moreover, in explaining that—beyond the separation of powers

concerns—under binding D.C. Circuit precedent special factors apply, Defendants noted that

adjudicating Plaintiffs' claims would "inevitably require an inquiry into classified information

that may undermine ongoing covert operations." *Id.* at 27 (citations and internal quotation

omitted). In his letter, the Attorney General stated that "information that remains classified"

shows that Anwar Al-Aulaqi "was continuing to plot attacks when he was killed." AG Letter

at 3. This classified information would be plainly relevant to whether Anwar Al-Aulaqi posed a

"concrete, specific, and imminent threat" at the time of the strike against him. Compl. ¶ 34.[4]

Furthermore, even after the AG Letter and the President's Speech, certain details about the

policy governing operations to use lethal force against terrorist targets outside the United States

necessarily remain classified. Defendants also explained that a "deliberative political process"

was best suited to examine the use of remotely piloted aircraft in counterterrorism operations,

and that this process should not be circumvented by inferring a remedy. Doc. 23, Defs.' Reply,

---

[4] The AG Letter and the President's Speech further make clear that while certain information
over which the United States had previously invoked the state secrets privilege in related
litigation is no longer classified, much of that information remains classified. *See* U.S. Statement
of Interest at 3-5.

at 13-14. The President explicitly referred to this political process in his speech. *See* President's Speech at 10-11 ("I look forward to actively engaging Congress to explore these and other options for increased oversight [of the use of missile strikes against terrorist targets overseas]."). Against this backdrop, judicial creation of a damages remedy should not interfere with the ongoing process between the political branches.

Lastly, Defendants established that they are entitled to qualified immunity because Plaintiffs failed to allege the violation of any clearly established constitutional rights. The Attorney General's statement last month that the use of remotely piloted aircraft and the targeting of Anwar Al-Aulaqi were subject to "exceptionally rigorous interagency legal review" and determined to be lawful—along with the President's statement that those actions were legal—only support the conclusion that those actions were lawful, and certainly were not clearly established to be unconstitutional in 2011. *See* AG Letter at 3-4; President's Speech at 7, 10. And to the extent that the Attorney General and the President disclosed certain additional, previously classified information regarding the threat Anwar Al-Aulaqi posed—such information is wholly consistent with Defendants' showing that Anwar Al-Aulaqi's due process rights were not violated. *See* MTD at 44. Similarly, the confirmation that Samir Khan and Abdulrahman Al-Aulaqi were not targeted is consistent with Defendants' articulation of their constitutional claims. *See id.* at 42-43 ("Plaintiffs make no allegations that either Samir Khan or Abdulrahman Al-Aulaqi was subjected to any unconstitutional 'process' as they were not alleged to have been 'targeted.'").

Dated: June 5, 2013

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General
Civil Division

RUPA BHATTACHARYYA
Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel
D.C. Bar No. 427461


  /s/  *Paul E. Werner*
PAUL E. WERNER
(MD Bar, under LCvR 83.2(e))
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

Attorneys for Defendants