UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NASSER AL-AULAQI, *et al.*,

                        *Plaintiffs*,

      v.

LEON C. PANETTA, *et al.*,

                        *Defendants*.

No. 12-cv-1192 (RMC)

## MOTION FOR LEAVE TO REPLY TO
## DEFENDANTS' RESPONSE TO THE COURT'S MAY 22, 2013 ORDER

      Pursuant to Federal Rule of Civil Procedure 7(b), Plaintiffs respectfully request leave to reply to Defendants' Response to the Court's May 22, 2013 Order ("Defs.' Resp.") (Dkt. No. 26). On May 22, 2013, the Court ordered Defendants to state "how, if at all," the acknowledgment made by the Attorney General in a letter to Congress on May 22, 2013 ("AG Letter"), that the United States killed Anwar Al-Aulaqi, Samir Khan, and Abdulrahman Al-Aulaqi, affects the legal issues in this litigation. Minute Order (May 22, 2013).

      Defendants' Response—which addresses the AG Letter as well as the President's speech the following day at the National Defense University ("NDU Speech")—states at the outset their position that neither the letter nor the speech "has any effect on the present legal posture of the case." Defs.' Resp. at 2.[1] Plaintiffs disagree, for the reasons explained below.

      Moreover, Defendants' submission goes beyond stating and explaining their answer to the Court's inquiry to make additional arguments in support of their Motion to Dismiss, to which Plaintiffs also wish to respond. *Cf. Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 195 (D.C. Cir.

---

[1] In citing the AG Letter and the NDU Speech, Plaintiffs refer to Exhibits 1 and 2 to the Defendants' Response.

1992) (acknowledging that consideration of arguments raised for the first time in a reply would be "manifestly unfair" to the respondent). Plaintiffs therefore respectfully request leave of this Court to file the following brief reply to Defendants' submission.

### PLAINTIFFS' PROPOSED REPLY TO DEFENDANTS' RESPONSE TO THE COURT'S MAY 22, 2013 ORDER

Defendants attempt to use the government's recent admission that it carried out the killings of the three United States citizens at issue in this litigation to bolster their argument that there is no role at all for the Court in adjudicating this case, and to improperly place new facts before the Court. But far from "under*scor*[*ing*]" Defendants' arguments in their Motion to Dismiss, Defs.' Resp. at 3, both the AG letter and the NDU Speech under*mine* them.

In his letter to Congress, the Attorney General explains the circumstances under which the government believes it may use lethal force against U.S. citizens abroad based upon its interpretation of the Fourth and Fifth Amendments, *see* AG Letter at 2 (referencing legal analysis in a speech at Northwestern University Law School and an unclassified Justice Department white paper). That explanation supports Plaintiffs' position that the legality of Defendants' actions is a question of constitutional interpretation, which is squarely committed to the Court. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803). For the same reason, the AG Letter undercuts Defendants' assertion about the lack of "judicially discoverable and manageable standards," *see* Defs.' MTD at 12 (quotation marks omitted); *id.* at 12–17. The Attorney General's discussion of these constitutional standards also flies in the face of Defendants' qualified immunity argument that they could not have known "whether, and to what extent . . . Fourth and Fifth Amendment protections" apply to U.S. citizens in this context. *Id.* at 32.

Further, the NDU Speech and the AG Letter substantially diminish the concerns Defendants raised about the impact of this litigation on the foreign relations of the United States

and the role of classified information in adjudication of the merits of Plaintiffs' claims. Defendants previously speculated that this litigation "could," for example, "clearly affect our government's relations with the government of Yemen," Defs.' MTD at 28; *see id.* at 11–12; Defs.' Reply at 5. That speculation retains little if any force in light of the President's and the Attorney General's public acknowledgment that the United States used lethal force against Plaintiffs' sons and grandson in Yemen, as Plaintiffs alleged in their Complaint. Additionally, the fact that the government has now declassified its use of lethal force against the decedents—after its long-standing argument that such disclosure would present grave risks to national security, *see, e.g.*, Defs.' MTD at 26–27—suggests that Defendants' blanket concern about the nature of any classified information involved in this case is also speculative. In any event, as Plaintiffs explained in their Opposition, the mere potential that additional classified information might be relevant in this case, *see* Defs.' Resp. at 4 & n.4, has no bearing at this procedural stage in the absence of a state-secrets claim, which the government has not made. *See* Pls.' Opp. at 24 n.29.

Notably, in the NDU Speech, the President specifically referred to the "benefit of bringing a third branch of government into the process." NDU Speech at 10. While he expressed some concern about potential constitutional issues arising from the establishment of a "special court to evaluate and authorize" requests to use lethal force *ex ante*, *see id.*, any such concerns would not apply to the traditional *ex post* review that Plaintiffs seek from this Court, and do not go to the competence of the Court to conduct this review. The President's acknowledgement that there may be a role for the Judiciary thus undermines Defendants' argument that the text of the Constitution precludes it. Pls.' Opp. at 7–15 (explaining why the political question doctrine

should not bar Plaintiffs' claims), 17–25 (same as to "special factors counseling hesitation" against a *Bivens* remedy).

Finally, as they have done before, Defendants make arguments based on facts that are not properly before the Court on their Motion to Dismiss. *See* Defs.' Resp. at 2 (arguing that the recent disclosures are "more detailed than previous public disclosures" and are "consistent with the factual material as to which Defendants asked this Court to take judicial notice"). As Plaintiffs made clear in their Opposition to Defendants' Motion to Dismiss, "the Court may not take judicial notice of Executive Branch assertions that are subject to reasonable dispute." Pls.' Opp. at 6–7. That the Administration has recently decided to add to its prior unilateral public assertions is of no moment as a legal matter at this stage of the litigation—as Defendants acknowledge. *See* Defs.' Resp. at 2 n.3 (admitting that "additional specific facts" from the AG Letter or the NDU Speech "would not technically be before the Court"). The Court must decide the legal issues raised by Defendants at this procedural stage according to the well-pled allegations in Plaintiffs' Complaint.

## CONCLUSION

For the reasons given above, the motion for leave to reply should be granted.

Dated:  June 11, 2013                                              Respectfully submitted,

Pardiss Kebriaei (*pro hac vice*)                    */s/ Hina Shamsi*
Maria C. LaHood (*pro hac vice*)                     Hina Shamsi (*pro hac vice*)
Center for Constitutional Rights                     Brett Max Kaufman (*pro hac vice*)
666 Broadway—7th Floor                               American Civil Liberties Union Foundation
New York, NY 10012                                   125 Broad Street—18th Floor
T: 212.614.6452                                      New York, NY 10004
F: 212.614.6499                                      T: 212.519.2500
pkebriaei@ccrjustice.org                             F: 212.549.2654
                                                     hshamsi@aclu.org

—5—

                                        Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union of the
  Nation's Capital
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
T: 202.457.0800
F: 202.452.1868
artspitzer@aclu-nca.org