UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


NASSER AL-AULAQI, ET AL,         :
                                 :
            Plaintiffs,          :
                                 :        Docket No. CA 12-1192
            vs.                  :
                                 :          Washington, D.C.
LEON C. PANETTA, ET AL,          :        Friday, July 19, 2013
                                 :             10:05 a.m.
            Defendants.          :
----------------------------x




TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiffs:        HINA SHAMSI, Esquire
                           BRETT M. KAUFMAN, Esquire
                           JAMEEL JAFFER, Esquire
                           American Civil Liberties Union
                           125 Broad Street, 18th Floor
                           New York, NY  10004-2400

                           ARTHUR B. SPITZER, Esquire
                           American Civil Liberties Union
                           4301 Connecticut Avenue, NW
                           Suite 434
                           Washington, DC  20008

                           PARDISS KEBRIAEI, Esquire
                           MARIA C. LAHOOD, Esquire
                           BAHER AZMY, Esquire
                           Center for Constitutional Rights
                           666 Broadway, Seventh Floor
                           New York, NY  10012

Appearances continued:

For the Defendants:          PAUL E. WERNER, Esquire
                             BRIAN HAUCK, Esquire
                             U.S. Department of Justice
                             P.O. Box 7146
                             Washington, D.C.  20044


Court Reporter:              CRYSTAL M. PILGRIM, RPR
                             Official Court Reporter
                             United States District Court
                             333 Constitution Avenue, NW
                             Washington, DC  20001


Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

```
1                    P-R-O-C-E-E-D-I-N-G-S

2            THE DEPUTY CLERK:  Civil action 12-1192, Nasser

3   Al-Aulaqi versus Sarah Khan, et al.

4            For the plaintiffs, Arthur Spitzer, Brett Kaufman, Hina

5   Shamsi, Maria LaHood, Pardiss Kebriaei.

6            For the defense, Paul Werner and Brian Hauck.

7            THE COURT:  Well, before we really begin I just want

8   to say holy cow.  This is a really serious matter.  So I

9   shouldn't say holy cow, but holy cow.

10            All right, we're here on a motion to dismiss filed by

11   the Government against the lawsuit brought by Mr. Al-Aulaqi,

12   Nasser Al-Aulaqi.

13            Since it's the Government's motion they get to go first.

14   I understand that there will be two people speaking for the

15   Government; is that correct?

16            MR. HAUCK:  Your Honor, just one person speaking for

17   the Government, Brian Hauck.  I believe there are two people

18   speaking for the plaintiffs.

19            THE COURT:  Okay, then I misunderstood.

20            Okay, one person speaking for the Government and who is

21   speaking for the defendants or for the plaintiffs, and how are

22   you going to divide your argument?

23            MS. KEBRIAEI:  Your Honor.

24            THE COURT:  Can you just come to the mic?  It just

25   works so much better.
```

1          MS. KEBRIAEI:  Sure.

2      Ms. Shamsi and I will be dividing, would like to divide

3  our arguments.  Defendants don't have an objection to that.

4      I would be addressing the defendant's political question

5  doctrine and Ms. Shamsi would take Bivens and qualified

6  immunity.

7          THE COURT:  And would take what?

8          MS. KEBRIAEI:  Bivens and qualified immunity.

9          THE COURT:  Could you do me a big favor and pronounce

10  your last name for me.

11          MS. KEBRIAEI:  Kebriaei.

12          THE COURT:  Kebriaei.

13          MS. KEBRIAEI:  That's exactly right.

14      And we would like to, Ms. Shamsi and I would like to

15  divide our time pretty equally if that's okay with you unless

16  you have a preference in terms of the allotment of how much

17  time you would like for political question versus Bivens and

18  qualified immunity.

19          THE COURT:  Well, I actually think political question

20  and Bivens are the two that, but Bivens and qualified immunity

21  are almost the same thing, so they all come out even.

22          MS. KEBRIAEI:  Okay, we're on the same page.

23      Thank you.

24          THE COURT:  Thank you.

25      All right then, Mr. Hauck.

1        MR. HAUCK:  Good morning, Your Honor, and we have one

2   housekeeping request.

3        One of my colleagues from the Justice Department who has

4   been integral in preparing the case, is not yet a member of the

5   Bar, but if the Court had not objection, I'd like to invite him

6   to counsel table.  Plaintiffs have no objection.

7        THE COURT:  I don't have any objection.

8        MR. HAUCK:  Thank you, Your Honor.

9        THE COURT:  Is this a person who's a lawyer?

10       MR. HAUCK:  He's a law student, Your Honor.

11       THE COURT:  Law student, okay.  Then that means he's

12  done all of the grunt work.

13       MR. HAUCK:  He's done a lot of work, Your Honor.

14       THE COURT:  He really should be able to come forward.

15  A man that's done the grunt work, he knows all of the answers,

16  so when you're not sure, you turn to him, okay.

17       MR. HAUCK:  I may tag him in, Your Honor.

18       THE COURT:  Yes.  All right, go ahead, Mr. Hauck.

19       MR. HAUCK:  Thank you, Your Honor.

20       Again, it's Brian Hauck representing former Secretary

21  Panetta, former Director Petraeus and for Admiral McRaven and

22  Lieutenant General Votel.

23       As the Court knows, these defendants are some of the

24  highest ranking military and civilian leaders in the country.

25       THE COURT:  Or they were.

1          MR. HAUCK:  That's correct, Your Honor.  Secretary

2    Panetta and Director Petraeus are no longer in Government

3    service.  Although Admiral McRaven and Lieutenant General Votel

4    remain positions, commanding positions at SOCOM and Joint

5    Special Operations Command.

6          Unless the Court has a different preference, I'll begin

7    with a quick overview of the case followed by going directly

8    into the core of justiciability issues.

9          THE COURT:  Well, unless the audience needs it, I

10   actually think that there isn't much argument about the facts.

11         If you think that there are points particularly as to

12   his son who has died, there might be factual points that you

13   need to make, but I don't think there's a whole lot.  So you

14   could go very on the top of the water, okay.

15         MR. HAUCK:  I understand, Your Honor.

16         So to address the political question doctrine first and

17   why that doctrine bars the Court from hearing the case and why

18   even if it didn't, the doctrine of special factors would

19   counsel dispositive hesitation towards creating a remedy that

20   Congress has not.  I'm also happy to address the qualified

21   immunity questions.

22         An issue is raised by this complaint are serious matters

23   of great importance.  Decisions are made from the highest level

24   of executive branch with robust oversight by Congress and the

25   President in a recent speech at the National Defense University

1  has invited further dialogue on the important policy questions

2  that are raised by this case.

3        One avenue to which that policy dialogue cannot occur is

4  through a personal liability damages remedy involving the most

5  delicate national security and foreign policy judgments when

6  Congress fully aware of and engaged on the issues has declined

7  to create one.

8        The political question doctrine recognizes that out of

9  respect for the separation of powers there are certain

10 questions that are so textually committed to the executive and

11 Congress and that are so within their core competence and so

12 foreign to the judiciary's competence that they are not fit for

13 adjudication.

14       And so Your Honor, the methodology for applying the

15 political question analysis is clear.  It doesn't just turn on

16 how sensitive the case is or how plaintiffs caption their

17 claims.  You look at the precise questions that the Court would

18 have to answer in resolving it and then you apply the Baker v.

19 Carr factors to those questions.

20       And when the Court does that it reaches decisions like

21 the D.C. Circuit reached in El-Shifa where it concluded that

22 the decision to launch, to launch a strike against a foreign

23 target abroad is a decision that is outside the Court's

24 competence and is committed to the executive.

25            THE COURT:  But in this case, we're talking about

1  U.S. citizens.  And I have questions of course for the

2  plaintiffs, but you're talking about U.S. citizens who were

3  killed by a U.S. strike.  I need you to talk about the second

4  of those strikes.

5          But as to the first, the fact that Congress and the

6  President agreed, what you're arguing is therefore that

7  Articles I and II overcome the obligation of the Article III

8  Courts to interpret and apply the Constitution.

9          Is that what you're saying?

10         MR. HAUCK:  That's not --

11         THE COURT:  I mean, you're leaving it to them to

12  decide.  So where does that stop?  At what point could a

13  President and the only couple of members in the senate and

14  house who are on special committees to know about these things,

15  at what point can they not decide that an American citizen

16  overseas is a danger to the country and therefore, without

17  process of law be killed?

18         MR. HAUCK:  I think there's a couple of questions in

19  there and I'll try to address all of them.

20         THE COURT:  There actually are.

21         MR. HAUCK:  Beginning first with the question of the

22  plaintiff's citizenship.  The reasoning in El-Shifa was much

23  broader than that.  It encompassed the consequences that the

24  Court would have to go through of dealing with questions of

25  whether the strike was appropriate there.  It wasn't turning on

1   whether the plaintiffs there were foreign or U.S. citizens.

2        Judge Bates recognized that in the injunction case here

3   where he recognized that the question of whether a citizen

4   hiding abroad who has been determined to be a member of, leader

5   of AQAP presents such an imminent threat that it warrants

6   lethal force is a question again committed to the Executive and

7   Congress.

8        So the citizenship question doesn't change the

9   difficulty with which, the difficulty of the question that the

10  Court would have to answer in the political question doctrine.

11       THE COURT:  Except that, I mean Judge Bates in the

12  end decided that the plaintiff in that case or plaintiffs

13  didn't have standing and that was ultimately his decision.  And

14  he talked about these other things, but didn't ultimately

15  decide them.  He made statements and everything, but it was

16  really a standing decision.

17       And I know you have standing arguments here, but I'm

18  going to not, we don't need to spend our time on that today.

19       A foreign national targeted by the United States in a

20  foreign place may not have, doesn't have constitutional rights

21  a U.S. citizen does.  And so when targeted by his own

22  Government, are you saying that the U.S. citizen in a foreign

23  nation has no constitutional right?

24       Let's say he was targeted and only injured.  Could he

25  file a tort claim?

1          MR. HAUCK:  Your Honor, I think that question sounds

2    like come up under the Federal Tort Claims Act and we would

3    analyze it there.

4          THE COURT:  Well, it's the same difference.  I mean,

5    it's the statute and not the Constitution.  The Constitution is

6    slightly more weighty.

7          MR. HAUCK:  Right, no doubt.  But again, the

8    political question doctrine I'm sticking here for a moment

9    although I can address special factors in the other questions

10   and the constitutional rights questions as you like.

11       But the political question doctrine really looks at what

12   are the questions that the Court would have to answer here.

13         THE COURT:  Okay.  So what you're saying is that the

14   questions here, that the plaintiffs who posit that the question

15   is whether or not the deceased grown Al-Aulaqi was an active

16   belligerent or posed an imminent threat of some kind, that's

17   their approach to this, and you're saying just to ask that

18   question is beyond the can of the Court?

19         MR. HAUCK:  That's correct, Your Honor.

20       And Courts have recognized this.  Courts like the D.C.

21   Circuit in People's Mojahedin recognize that imminent analysis

22   of whether a threat abroad is so serious that it requires that

23   kind of action.  It's a question that Courts don't have the

24   apparatus to analyze in the same way that the executive or

25   Congress do.

1          In fact, the Waterman Supreme Court decision talks about

2    when analyzing the foreign policy issue the consequences of

3    these kinds of decisions involve a kind of prophecy that the

4    Courts aren't able to deal with.

5          But in fact, Your Honor, it's not prophecy, it's

6    expertise, an institutional apparatus that is built up through

7    foreign service agents, through military officials, through

8    covert operations to inform the judgments that have to go into

9    this.  The Courts just aren't in a position to second guess or

10   analyze those questions in the same way that the executive or

11   Congress are.

12         THE COURT:  And so as a result of that, the targeted

13   individual has no constitutional right at all?

14         MR. HAUCK:  This isn't a question of whether they

15   have a constitutional right.  It's whether the Courts can

16   adjudicate through private litigation that kind of claim.

17         THE COURT:  Okay.  So they might have constitutional

18   rights, but I'm sorry, you can't assert them anywhere.

19         I mean, where else would one assert a constitutional

20   right except in an Article III Court?  I mean, this is, the

21   problem is how far does your argument take you?

22         Let me say and I would be interested in what the

23   plaintiffs have to say.  If we were at active war with a

24   country and I'll pick a country that's easy to identify and

25   nobody will think it has any political implications except I

1    needed a country.  Let's say we're at war with Switzerland.

2    They don't go to war.  They don't go to war, Switzerland

3    they're very firm about that.  But we're at war with

4    Switzerland and some Swiss descendants in the United States

5    decide that they are actually on the side of the Swiss, they

6    think that we have been belligerent and terrible.  They go to

7    Switzerland and they join that Army and then we have a battle

8    and they get killed.

9         Well, they didn't have, they exercised their rights and

10   they got killed in active battle and I think that there is no

11   claim that they might have to any sort of constitutional right.

12   We all agree.

13        You agree with that, right?

14        MR. HAUCK:  The question is whether they have a

15   constitutional right?

16        THE COURT:  Yeah.

17        MR. HAUCK:  Well, Your Honor, I think the --

18        THE COURT:  They've taken up arms against the United

19   States.  They've joined with others against whom we're in

20   battle and they get killed because other people in battle get

21   killed.

22        You agree with that?

23        MR. HAUCK:  I think the President has said that the

24   United States could never kill a U.S. citizen without due

25   process of law.  So I think there may be constitutional issues.

1          THE COURT:  Which President?

2          MR. HAUCK:  I think it's in the President's National

3  Defense University speech.  We can check the text though.

4          THE COURT:  Well, okay, if the President thinks that

5  no American get killed without due process of law --

6          MR. HAUCK:  I should be specific.

7       No U.S. citizen could be targeted for killing without

8  due process of law.

9          THE COURT:  Where was the due process in this case?

10         MR. HAUCK:  Your Honor, that would shift us from the

11  political question doctrine to the rights at issue.  And Your

12  Honor --

13         THE COURT:  Well, no.  If the political question

14  doctrine is as broadly as you describe, none of the rest of

15  this matters.  Right?

16         MR. HAUCK:  It does matter, Your Honor.  I'm not

17  saying that there are no checks on this system.

18         THE COURT:  Okay, where are they?

19         MR. HAUCK:  First of all, there's an extensive

20  executive review process.

21         THE COURT:  No, no, I'm sorry.

22       The executive is not an effective check on the executive

23  when it comes to an individual's constitutional rights.

24       It's not that I intend to disrespect any person in the

25  executive branch from you all the way up.  But you cannot ask a

1  Judge to say okay well, the executive will check himself.

2       MR. HAUCK:  Your Honor, I think I would note that the

3  decisions are made at the highest level after an extensive

4  review but I understand the Court's point.

5       Then there's an extensive and robust congressional

6  oversight process that even in this case involved the relevant

7  committees of Congress being aware of the decision to target

8  Mr. Al-Aulaqi before it occurred and then being briefed on

9  every decision to strike -- excuse me -- every strike outside

10 of Iraq and Afghanistan regardless.

11      So Congress is imminently engaged in this.  It's the

12 Constitution that dictates that these branches or the

13 appropriate branches to resolve the issue.

14      To return to the Court's question about the -- so it's

15 not just theoretical oversight but it's actively happening

16 here.

17      But the second point, Your Honor, to return to the

18 citizenship question is that the -- sorry -- the issue of the

19 constitutional right.  Courts do hear constitutional rights all

20 the time but not when they're barred by doctrines like standing

21 or political question doctrine or special factors.

22      Gilligan, the due process case we site in our brief.

23 That is at page 6, it's a due process claim.  That is a

24 constitutional right that was barred by the political question

25 doctrine.

1          THE COURT:  Believe me, I know the political question

2    doctrine.  I've applied it.  I understand the hesitation to

3    extend Bivens to unclear places, I understand the clarity of

4    the wrong that has to exist, et cetera.  I promise, I

5    understand the law that you're talking about.

6          What I'm trying to figure out is where is it cabined.

7    How broadly are you asserting the right for the executive with

8    or without knowledge of Congress to target an American citizen,

9    and I understand that this American citizen had dual

10   citizenship, he's still an American citizen.  I don't know if

11   the young man had dual citizenship.  I'm not sure.

12         Anyway, where is the limit to this?  And the limit is

13   the courthouse door.  Okay.  That's the limit.  And you're

14   saying, well there's no courthouse door that this has to go

15   through.  Judges don't have the understanding of the, all of

16   the circumstances that they need to have.

17         MR. HAUCK:  I think --

18         THE COURT:  You would be surprised at the amount of

19   understanding that other parts of the Government think Judges

20   need to have.

21         MR. HAUCK:  I understand, Your Honor.

22         The case we are talking about is a very extraordinary

23   narrow set of facts.

24         THE COURT:  But the argument you are making isn't.

25   You see, that's the problem I am having.  The argument you're

1    making isn't tied to these facts.  It's tied to an assertion of

2    authority that says that the Court has no role in this.  None,

3    none, none.

4        And if I decide that the way you have argued it, I find

5    that a little disconcerting that the executive and according to

6    you, the Congress, would just say, okay, American citizens you

7    can travel wherever you want but if we decide that you're an

8    enemy or that you're a danger to us, we can get you wherever

9    you are and you have no recourse to any court.

10       Now I'm not saying that they have a meritorious claim

11   because we haven't finished the argument and I haven't decided.

12   But you see, the scope of your argument is what concerns me.

13   It just would gobble up all of the air in the room.

14       MR. HAUCK:  Your Honor, just to go through some of

15   the questions that the Court would have to answer just in this

16   case.

17       THE COURT:  Okay.

18       MR. HAUCK:  You would have to look at how imminent

19   was the threat.  What was the likelihood of heading off of,

20   when would the window of opportunity close here.  What would

21   the consequences be not of just this action but of alternative

22   actions.  What were the consequences of foreign policy of some

23   of those actions be.

24       What would the consequences be of not acting.

25   Particularly with respect to the second strike, Your Honor, and

1   actually the one plaintiff's claim with respect to the first

2   strike.  It's a question of what is the right moment to strike?

3   And where should they strike.  These questions are

4   extraordinarily sensitive questions that Courts have recognized

5   belong in the executive's competence.  You can tie the ruling

6   in this case to those precise questions.

7        Your Honor, even if, even if the Court were concerned

8   about the political question doctrine, it's all of these

9   reasons that counsel dispositively against creating a remedy

10  that Congress has not.

11        We're talking in the Bivens context.  We're talking

12  about a situation where the D.C. Circuit has been clear and

13  firm in it's respect of these separation of powers cases that

14  the Court should not apply a remedy.

15        It's most recent pronouncement was in Doe v. Rumsfeld

16  where it recognized that the Supreme Court has never implied a

17  Bivens remedy in a case involving the military national

18  security and foreign policy.

19        And the reason that we don't want these counterterrorism

20  and national security officials distracted by the threat of

21  litigation in their personal capacity when they're making these

22  decisions and Doe was building on a long line of cases

23  involving things like Ali and Rasul in which the Courts are

24  talking about the dangers of implying a remedy and hindering

25  our ability to act decisively and without hesitation when we

1   need to.  It's Ali that talks about fettering a field commander

2   with litigation.

3       Your Honor, these are actually commanders still in

4   active operation that would be called into court perhaps to

5   testify, to give depositions by the very individuals that the

6   United States has asked them to defeat.

7       So creating a remedy here would be extraordinary and the

8   D.C. Circuit has been clear and firm that that's not the way to

9   go here.

10      One thing I flag, Your Honor, is that all of these cases

11  are in fact detention cases where the Supreme Court -- excuse

12  me -- where the Constitution recognizes a role for the

13  judiciary through the suspension clause.  Where the Courts are

14  much more accustomed to dealing with kinds of long term

15  detention issues.  So even in the detention context the Courts

16  aren't going to imply a remedy or the D.C. Circuit is not going

17  to imply a remedy.

18          THE COURT:  There might be remedy in the detention

19  cases except for statutory considerations.  I mean, it depends

20  which is the detention and who is the detainee and where they

21  are being detained, of course.  It matters a lot who is the

22  detainee and where they are being detained.  And so there are

23  no absolutes in that context.  It, it is so person specific.

24  And here the persons in question are all U.S. citizens.

25          Now, at some point I want you to talk about collateral

1   because there's a, statements in your brief that the death of

2   Mr. Kahn and of the younger Al-Aulaqi are as a result of

3   collateral consequences, not targeted consequences.

4        The plaintiffs say well, you targeted someone and so you

5   still didn't give these U.S. citizens their rights.  I

6   understand that.  But I think that it makes a material

7   difference if the descendant is just an accident of having been

8   close to where a targeted strike occurred.

9        So why don't we move to that for just a minute because

10  we have two entirely different kinds of claims here.

11       MR. HAUCK:  Sure.  Just briefly on that habeas

12  question, Your Honor.  Doe v. Rumsfeld involved a U.S. citizen

13  and the Court is still not going to imply a remedy there.

14       THE COURT:  I know, I remember.

15       MR. HAUCK:  In terms of the individuals who are not

16  specifically targeted.  I think you cannot separate those

17  strikes, remember, from the fact that those were strikes that

18  were targeting individuals.

19       So the very concerns whether in the political question

20  and the special factors doctrine about the consequences of --

21       THE COURT:  Well, but wait.  If the, I mean, maybe my

22  analysis is wrong.  But if the United States is going after X,

23  X is not a U.S. citizen, X is not a plaintiff.  Going after X

24  and Y who is a citizen and who is a plaintiff happened to be

25  having coffee I'll say, I'm making this up entirely, with X,

1  and is injured or killed as a result, it's not that the United

2  States targeted Y.  So I think that the constitutional analysis

3  is very different.  I mean, it's accidental as opposed to

4  intentional.

5        Is that not what your argument is?

6        MR. HAUCK:  I guess if we're moving from the special

7  factors analysis directly to the constitutional rights.

8        THE COURT:  No.  I'm moving to the facts of the death

9  of the two persons who were not targeted.  I want to know if

10  your argument is that well, their deaths while unfortunate were

11  not intended, or no, we intended them and the analysis should

12  be the same.  That's what I need to know what your argument is

13  as to those two.

14        MR. HAUCK:  Your Honor, I think the argument is that

15  we still cannot imply a Bivens remedy for those cases because

16  there are -- maybe I'm misunderstanding the Court's question.

17        THE COURT:  You are misunderstanding the question.

18        I think that the constitutional analysis in the very

19  first place, forget remedies, whether or not there's even a

20  claim would vary depending on whether the U.S. citizen was

21  targeted by the United States or was killed when the United

22  States was actually targeting someone else and they just

23  happened to be too close.

24        Question, are the two persons, Mr. Kahn and the younger

25  Mr. Al-Aulaqi, are those persons deceased by the accident of

1  their presence when there was a target on someone else, or are

2  they deceased because they were also targeted?  Can you answer

3  that question?

4         MR. HAUCK:  They were -- the plaintiffs do not allege

5  they were specifically targeted.  So the plaintiffs allege that

6  other individuals were targeted there and that they were killed

7  by those strikes that were targeting other individuals.

8         THE COURT:  All right.  Do you agree with me that if

9  they were not targeted by the United States that the

10 constitutional analysis to the extent one goes through one

11 would vary?

12        MR. HAUCK:  It would.  I can walk through the

13 different claims and talk about that.

14        THE COURT:  Okay.

15        MR. HAUCK:  With respect to the procedural due

16 process claim, Your Honor, Plaintiffs do not describe in their

17 brief any procedural due process right that was violated with

18 respect to those other individuals.  They were not the subject

19 of a targeting process that could have been unconstitutional.

20        THE COURT:  Right.

21        MR. HAUCK:  That one is easy.

22         With respect to the Fourth Amendment claim whether they

23 were seized.  Now we would have to walk through a number of

24 suppositions about the manner in which the Fourth Amendment

25 applies abroad, but it was certainly whether it was clearly

1    established.  We can talk about those questions.

2              THE COURT:  We don't have to.

3              MR. HAUCK:  We don't have to.  But the question of

4    assuming that the domestic law enforcement cases where how the

5    Fourth Amendment applies here, we would know that there was not

6    a Fourth Amendment event in that instant.  You look at the

7    cases where bystanders are caught up in law enforcement events

8    and those cases recognize that the individual who may have been

9    the intended target, that's the phrase from the Supreme Court

10   decision, the intended target may have had Fourth Amendment

11   event, but the effects on those were not targeted, not the

12   intended target, there's not a Fourth Amendment event there.

13             THE COURT:  Okay.

14             MR. HAUCK:  But before we would get there we would be

15   talking about whether these rights were clearly established.

16             THE COURT:  No.  You see, you can do it either way.

17   As you know, you can do it either way.  You can either say

18   well, they're not clearly established and so I'm not even going

19   to go into them or you can start with whether there's actually

20   a constitutional right that's even asserted.  Okay.  So you

21   have answered that for me.

22        Go back to, I understand your argument about Bivens,

23   you're saying it's impossible to apply Bivens against persons

24   who are executing U.S. military and foreign policy at the

25   highest levels.  And I recognize that argument having dealt

1   with it before.

2       So are you saying then that in the end there is no claim

3   for not just Mr. Al-Aulaqi's family, but no claim for a U.S.

4   citizen in his circumstance?

5       MR. HAUCK:  Your Honor, I think there could be a

6   claim if Congress were to create one but Congress hasn't.  I

7   should note that --

8       THE COURT:  Well, but you're talking that there could

9   be a claim if Congress created one, that would be a statutory

10  claim.

11      I'm talking about a constitutional claim.  Does a U.S.

12  citizen have a constitutional claim to, we'll call it due

13  process for lack of another immediately available concept, to

14  avoidance of death at the hand of the United States without

15  declaration of guilt?

16      MR. HAUCK:  Your Honor, this is not -- there are

17  other context in which there may be important events at issue,

18  incredibly important events at issue, important rights at issue

19  but in which the case is not ultimately going to be one that

20  the Courts get to the merits of.

21      It may be barred by standing.  It may be barred by, you

22  know, in the special factors in other cases.  It may be barred

23  because the Ferris doctrine bars it.  It may be barred because

24  under the foreign, Federal Tort Claims Act the foreign country

25  exception bars it.

1       So this case is unusual but if it's very naturally

2  within a pretty well established body of law the Courts are not

3  going to reach the merits of every constitutional claim.

4  That's the constitutional design in entrusting these issues to

5  the executive and to Congress.

6       THE COURT:  There's a man who won't be taken off

7  message.

8       MR. HAUCK:  Your Honor, I would note one other thing

9  with respect to the qualified immunity analysis.

10      THE COURT:  Yes.

11      MR. HAUCK:  You noted that it could be possible to

12  begin either with the particular right in question or with the,

13  whether it was clearly established.

14      Ali talks very clearly about it would be the very

15  unusual case in this Circuit to begin with the right at issue.

16  I would note that beginning with the right at issue, could lead

17  the Court very much into the most delicate and consequential

18  military national security foreign policy questions.  So for

19  those reasons avoiding the constitutional issues on this

20  record.

21      THE COURT:  You are of course talking about all of

22  these concepts that are in fact as you describe them well

23  established and well known to anybody who has done any work in

24  this area, if not to the general public.

25      But you haven't told me what's the, where is the fence.

1  What constrains the executive in this decision process?

2          MR. HAUCK:  Your Honor, I think first of all, there's

3  the constitution structure imposes a very strong rule.

4          THE COURT:  The constitutional structure has three

5  branches of Government of which, you know, I happen to be the

6  third, the one that is normally yelled at and not given any

7  money, that's the one that I'm in.

8          Actually, I take it seriously to be in this branch of

9  Government because I consider us a nation of laws.  Do you see?

10 That's what we're talking about.  The most important thing

11 about the United States is that it's a nation of law.  And

12 everybody from Presidents down to homeless people are obligated

13 to follow the law, including Judges.  Okay.

14         So if there are precedence that apply I have to follow

15 the precedence.  I understand that.  But your argument has no,

16 no end to it.  You say the, and the force of your argument is

17 that if the President acting with his military advisors is

18 considering someone in the world to be a threat against the

19 United States, someone in the world who maybe is a threat

20 against the United States, the President can decide

21 unilaterally to kill that person regardless of whether they

22 have a status as a U.S. citizen.

23         And I need to know where you say the ends of that right

24 are.  Do they end when he goes up to Capital Hill and somebody

25 on a Congressional committee says oh, no, we don't agree with

1  that?  Is that the end of that right?

2       MR. HAUCK:  Your Honor, let me be very clear about

3  one thing that we're arguing here.  The argument we're making

4  is very much tied to the locus of this conduct being overseas.

5  The theory that we're advancing --

6       THE COURT:  No, I understand that.  I completely

7  understand that.

8       I mean, you're not talking about a domestic activity at

9  all.  Although to be perfectly frank, your argument does not

10 make that distinction but I understand that that's the point

11 you're making.

12      But you still don't have any fence around it.  You don't

13 have any end to it.  The best I can get out of you is well, he

14 talks to Congress.

15      MR. HAUCK:  No, Your Honor.  I think looking at the

16 questions that the Court would have to answer --

17      THE COURT:  No, no, no, no.  Wait.  I'm going into

18 the thicket you don't want me to go into.

19      And my problem is that your argument is that a U.S.

20 citizen has no constitutional right at all, can't even bring it

21 to court.

22      MR. HAUCK:  Your Honor, to be clear.  We're not, the

23 question of whether they have constitutional rights and whether

24 it's a case that can be heard in court are different.

25      We are talking about whether the case can be heard in

1   court.

2         THE COURT:  If they have constitutional rights where

3   would they assert such rights if not in court?

4         MR. HAUCK:  Again, Your Honor, there are

5   constitutional rights that end up not being heard in courts.

6         THE COURT:  Okay, I agree with that.  Where would

7   they assert it?

8         MR. HAUCK:  Your Honor, it's a right that the, that

9   the President and the Congress work together to make sure that

10  they're protected.

11        We're talking not just about the deterring, deterring

12  the violation of constitutional rights.  We're also talking

13  about deterring federal national security officials from doing

14  their jobs.  This case is not just about a broad policy

15  dispute.  It's about litigating an actual case and determining

16  whether these four individuals would be liable.

17        THE COURT:  I, believe me, I promise you.  I just,

18  I'm really troubled.  I mean, I think as might be obvious, I'm

19  really troubled by the argument that, that you cannot explain

20  to me where the end of it is.  That yes, they have

21  constitutional rights, but there is no remedy for those

22  constitutional rights.  That's what you're telling me.

23        MR. HAUCK:  Your Honor --

24        THE COURT:  And there's no avenue to raise them?

25        MR. HAUCK:  Your Honor, the President has invited a

1   dialogue about whether there should be and Congress could

2   decide that.

3            THE COURT:  I'm sorry.  Congress cannot interpret the

4   Constitution.  They can pass laws.  The Court interprets the

5   Constitution.

6            MR. HAUCK:  But they can decide when there are

7   remedies that are appropriate.

8            THE COURT:  Yes.  They can decide that under a

9   statute.  That's not what we're talking about here.

10           MR. HAUCK:  Your Honor, they could create a cause of

11  action to bring this kind of constitutional claim.

12           THE COURT:  No.  If there is a constitutional claim

13  that can be brought, it doesn't require Congress to approve it.

14           MR. HAUCK:  But Congress could approve it, Your

15  Honor.

16           THE COURT:  They could approve it.  But if it exists

17  we don't need them to say as much.  That's what courts are for.

18       Now I'm not saying that in the end everything you say

19  may not be right.  But the fact that you give me no

20  alternatives, that you claim full authority for the President

21  and the Congress to do whatever without any aspect of court

22  oversight is very troubling, let me just be clear.

23           MR. HAUCK:  Your Honor, if I could also be clear.

24  The President has described how often this kind of situation

25  has occurred.  He referred to there being one instance and it's

1   this instance in which the United States has targeted a U.S.

2   citizen abroad since 2009.

3           This is not the kind of thing that arises again and

4   again and again.  This is extraordinary.  So for the Court to

5   create a new remedy here would be creating a remedy that will

6   effect how federal officials protect a national security when

7   Congress is entrusted with that decision.

8           THE COURT:  Okay.  I, we're talking past each other

9   because you are not grappling with the problem that you're

10  posing to me.

11          You're grappling with all of the reasons why I shouldn't

12  even consider the problem that you're posing to me.  And I

13  understand that that's your legal position.

14          But I'm saying if that's your legal position that

15  there's this place where the Court can't go, who can go there?

16  What is a U.S. citizen to do if not to turn to the Court, the

17  rule of law in the United States?

18          MR. HAUCK:  Your Honor, I understand the Court's

19  concern with entrusting that entirely to the political

20  branches.  But again, I remind the Court that this is not

21  extraordinary in the legal framework.  There are areas where

22  the proper resolution and what the Constitution requires is not

23  a judicial litigation.

24          THE COURT:  And on that, you are one hundred percent

25  correct.  Thank you, sir.

1          MR. HAUCK:   Thank you.

2          THE COURT:   All right.  Who is going to argue first

3   for plaintiffs?

4          MS. KEBRIAEI:   Good morning, Your Honor.

5      If I may, I wanted to also just begin with a brief

6   response to defendant's arguments before I turn to political

7   question and then my co-counsel will take Bivens and clearly

8   establish.

9          Your Honor, defendants' arguments in this case aren't

10  just wrong.  They're dangerous.  It's basic proposition is that

11  the executive branch has the power to kill its own citizens far

12  from any battlefield without ever having to present evidence to

13  any Court.

14         One of the people the Government killed was 16 year old

15  Abdulrahman whom not even the Government says was doing

16  anything wrong.  With respect to that 16 year old boy

17  defendant's position is that the Court has no role to play as

18  you heard, that the executive can kill an American teenager

19  without ever having to explain why.  That can't be the law.

20         The Fifth Amendment prohibits the Government from

21  depriving an American of life without due process and accepting

22  defendant's arguments would empty that phrase of any meaning.

23         Before I go on to the political question doctrine I just

24  wanted to underscore how narrow this case ultimately is.  There

25  is no dispute that these killings took place outside of any

1   actual hostilities.  The Attorney General's letter which Your

2   Honor inquired about publicly acknowledges that, that these

3   strikes were outside of the area of active hostilities.

4        Therefore, there's no dispute that the government's

5   authority to use lethal force here was subject to the Fourth

6   and Fifth Amendments.  The letter and the Justice Department's

7   white paper discussing its authority to kill American citizens

8   in these precise circumstances acknowledges that the Fourth and

9   Fifth Amendments attach to American citizens even abroad.

10       There's also general agreement about what the standards

11  are.  The white paper uses the same standards that we use in

12  our brief.  It cites the same cases that we cite in our brief.

13  The fundamental disagreement here is about whether the legal

14  standards were met and that's the kind of disagreement Your

15  Honor and the Courts resolve all the time.

16       Turning to political question directly.  We would agree,

17  Your Honor, that defendants would read out the Constitution's

18  commitment to the Fifth Amendment and the Court's role in

19  interpreting and enforcing the Fifth Amendment and replace it

20  with their asserted war powers under the AUMF.

21       Plaintiff's question here which is the focus of the

22  political question inquiry is whether defendants use of lethal

23  force against their American citizens, sons and grandsons

24  violated the Fourth and Fifth Amendment.  That question is

25  squarely committed to the Court.

1          THE COURT:  Okay, let's look at this sort of

2    realistically.  There is no doubt that Al Qaeda attacked the

3    United States in 2011.  And that that organization has called

4    for continued war against U.S. interests around the world and

5    has attacked U.S. interests in various places around the world.

6          There's also I think little doubt as a matter of fact

7    that Al Qaeda has spread to many locations and that it is

8    operative in Yemen.

9          Do you disagree with that?

10          MS. KEBRIAEI:  Your Honor, for political question

11    purposes and whether Your Honor has a role in adjudicating the

12    ability to even hear this case, whether we are within or

13    outside of the AUMF, whether we accept defendant's position or

14    not, doesn't matter.  You have a role.  And the scope of your

15    inquiry may expand or contract depending on whether you believe

16    plaintiffs which asserts that we are outside of the context of

17    our own conflict.

18          Just to be clear on the armed conflict question, we

19    agree the Attorney General said it, the white paper says it, we

20    all agree that this was outside of any active hostilities.  The

21    only dispute is whether the AUMF applies.  And that is relevant

22    only because the inquiry might, you either have one textual

23    commitment if you are outside of armed conflict like the

24    plaintiffs allege or you have the political branches involved

25    as well.

1        If the political branches are involved, that doesn't

2    read out the judiciary's role.  It may call for a more

3    differential inquiry like Hamdi.  Hamdi made that clear.  The

4    Court maintains it's role even when you're looking at an

5    American citizen who is captured on the battlefield in

6    Afghanistan, the Court maintains a role alongside the political

7    branches.  Hamdi made that clear and we're not even in a Hamdi

8    situation.  We're outside of hostilities.

9        So the question of context is really only an AUMF

10   question.  Your Honor may find that the AUMF applies.  But for

11   justiciability, it doesn't matter.  It doesn't read out the

12   Court's role in looking at these claims.

13       THE COURT:  So on my example of Switzerland carefully

14   selected to be a silly example.  My example of Switzerland you

15   would agree that if Swiss descendants left, and citizens of the

16   United States left the United States, went to Switzerland,

17   joined their Army, went out on the battlefield and were killed,

18   that they had taken up arms against the United States and

19   therefore put themselves at that risk and they did not suffer

20   due process wrongs as a result; do you agree with that?

21       MS. KEBRIAEI:  Again, for political question purposes

22   which goes to the role of the Court, I think that the Supreme

23   Court has made clear even in the World War II cases that

24   citizenship is the head of jurisdiction.  And they would have a

25   right to assert Fourth and Fifth Amendment rights in court.

1    I think it's also just important though to go back to

2    context and that we are, I accept Your Honor's hypothetical,

3    but what we're talking about here is far from a, a World War II

4    or a nation state sort of conflict.  We're talking about a, an

5    area that the Government now concedes completely was outside of

6    any active fighting.  We're not talking about an active combat

7    situation.  We're only talking about --

8         THE COURT:  No, I'm just trying to --

9         MS. KEBRIAEI:  Right.

10        THE COURT:  -- trying to mark places off.  I can't

11   get either side to kind of say okay, that's fine.  We're not

12   arguing, Judge, you can believe that, that's fine, we're not

13   arguing about that.

14        I'm just trying to say okay, now how broadly do I really

15   have to consider all of this?  According to the Government, I

16   don't consider any of it because it's a political question and

17   I can just say that and be done with it.

18        MS. KEBRIAEI:  Your Honor, if the AUMF applied and we

19   concede that Your Honor may find that the AUMF applied and the

20   AQAP is associated with Al Qaeda but that doesn't, the

21   Government and we agree on the standards that would apply in

22   that situation.

23        They say, they cite Gardner, they cite Scott in their

24   white paper and they say the test here is reasonableness.  The

25   test here is whether the person presented an imminent threat.

1   The test here is whether capture was not feasible.

2        Those are exactly the standards and the criteria and the

3   cases that we cite in our brief and the defendants say in their

4   brief are not the appropriate guide.  So we're actually talking

5   about the same standards.  And the same factual context.  It

6   is, you know, for political question purposes, it is about

7   whether your power is shared with the political branches and

8   your determination about how that role contracts or not, if we

9   are in that context.  That's only if you get to deciding that

10  we're in the AUMF.

11        Plaintiffs allege that we are not in that context.  Even

12  if you do that, even if you accept that we are, it's just a

13  matter of the scope of your inquiry.  It doesn't extinguish the

14  inquiry.

15        THE COURT:  Okay, what about the distinction between

16  the accidental, unintended victim and the intended victim?

17        MS. KEBRIAEI:  Your Honor, with respect to --

18        THE COURT:  The unintended victim, and particularly

19  the 16 year old unintended victim, may be tragic but the

20  question is does such an unintended victim have a claim?

21        MS. KEBRIAEI:  Just to be clear, Your Honor, we

22  allege in our complaint, we allege that whether or not

23  Abdulrahman, 16 year old Abdulrahman was the target, the use of

24  lethal force against him was unreasonable.

25        We don't allege that he was not the target.  The

1  defendants assume that.  For political question purposes,

2  though, you don't assuming he wasn't the target.  Assuming he

3  wasn't the target, you wouldn't need to even decide the target

4  because for political question purposes, the question here is

5  still about his Fourth and Fifth Amendment rights.  It's about

6  whether his killing was constitutional or not.

7       And to determine that question you have standards

8  available to you.  Under the Fourth Amendment it's a

9  reasonableness test.  We would allege that an operation that

10 targets a civilian eating area in plain view, outside of the

11 area of active hostilities that kills at least seven people

12 including two minors is unreasonable, is objectively

13 unreasonable.

14       So you don't even really need to figure out who the

15 target is.  We can assume for manageability concerns that even

16 if Abdulrahman were killed as a bystander that the question is

17 still about his constitutional rights, the test is

18 reasonableness.

19       THE COURT:  Well reasonableness is the Fourth

20 Amendment, right?

21       MS. KEBRIAEI:  That's right.

22       THE COURT:  So you're saying that he was seized?

23       MS. KEBRIAEI:  Yes.

24       THE COURT:  I have trouble with that analysis.  I

25 understand your Fifth Amendment arguments, but I have trouble

1   with your Fourth Amendment seizure argument.

2         MS. KEBRIAEI:  Your Honor, we cite Fourth Amendment

3   cases in our brief that establish that when force is used

4   willfully, even if the casualty isn't the specific intended

5   target, when force is used willfully there can be a seizure.

6       I can point you to the cases in our brief.  That again

7   though for justiciability purposes would be a matter for you to

8   determine whether he was seized and whether force was

9   unreasonable.  But for political question purposes, defendant's

10  argument that you can't manage that question because standards

11  don't exist just doesn't comport with the standards that do

12  exist for you to determine under the Fourth Amendment if --

13        THE COURT:  Well, but you would apply Fourth,

14  domestic Fourth Amendment rights in this very nondomestic

15  environment, right?

16        MS. KEBRIAEI:  Your Honor, the Government does that.

17  The Government in their white paper, they cite Garner.  They

18  cite Scott.  They are applying the same cases.  They are

19  drawing the same criteria from those cases.

20      So what's become evident since briefing is that we

21  actually agree.  We agree that the Fourth and Fifth Amendments

22  apply, we agree what the test is.  We agree what the cases, the

23  right cases are for Your Honor to look at.  We agree on what

24  the criteria are.  I mean, there is no daylight at this point.

25        Maybe in, you know, in February when we're months ago

1  when we were briefing it was unclear what the disagreement was.

2  But at this point it is absolutely clear we are talking about

3  the same factual context.  They're not saying that this was

4  hostilities, they're not saying this was Afghanistan.  We are

5  talking about the same rights.

6      They're not disputing that the Fourth and Fifth

7  Amendments apply to all three of these individuals and we're

8  talking about the same tests.  So for political question

9  purposes it is absolutely Your Honor's role and ability to look

10 at these claims.

11          THE COURT:  And so you would think and argue that the

12 issue of the imminence of danger and things like that are

13 subject to judicial analysis even in the context of what the

14 Government, Mr. Hauck, uses determinations made at the highest

15 levels of the executive and military, executive with military

16 advice and counsel and also at the highest levels of the

17 Congress that I can still have a judicial role in deciding was

18 this really a risk or not?

19          MS. KEBRIAEI:  Your Honor, I mean, let's look at the

20 habeas cases.  Those are enemy combatant determinations made at

21 the highest levels.  The Court reviews those determinations.

22 It looks at facts in the past and in determining whether

23 someone and how significant, whether and how significant are a

24 part of Al Qaeda an individual is, the Court is determining

25 threat.  It is reviewing the military's determination at the

1   point of capture about enemy combatant status.  The facts don't

2   change.  The review --

3           THE COURT:  It's not actually at the point of

4   capture, but okay.  Other than that, your statement is correct.

5           MS. KEBRIAEI:  You know, look at the arguments

6   defendants bring up.  They cite El-Shifa.  As Your Honor

7   pointed out, the absence of constitutional claims in that case

8   mattered to the en banc Court.

9           They said to plaintiffs you can point to no comparable

10  textual commitment here versus Article III power.  Those

11  plaintiffs were foreign plaintiffs.  They were alleging tort

12  claims for defamation.  That is the case they cite to say that

13  you have no power, you have no role here in looking at Fourth

14  and Fifth Amendment claims of U.S. citizens.

15          They cite PMOI.  PMOI I think is also for the same

16  reason.  There was no constitutional claim there.  The

17  plaintiffs were foreign groups, challenging the designation of

18  the Secretary of State.  Her designation is they were foreign

19  terrorist organizations.  They asserted Fifth Amendment rights.

20          The Court said no, you have no Fourth and Fifth

21  Amendment rights, there's no constitutional claim here.  And

22  furthermore, I think they were probably looking at that review

23  of that determination was more unmanageable or more better left

24  with the local branches perhaps because it was a continuing and

25  ongoing threat.  We're looking at facts two years in the past.

1          THE COURT:  Well, but had the drone strike been

2    unsuccessful, it might be a continuing threat.

3          MS. KEBRIAEI:  But that would be a different case.

4          THE COURT:  All right, if you assume arguendo that

5    the, forgive me for not being able to -- but that one of the

6    leaders of Al Qaeda in the Arabian peninsula was engaged in,

7    had been engaged in belligerent activity against the United

8    States and now he's not available, but if he were he would be

9    continuing that.  The argument that it was in the past, but now

10   something else is not, doesn't actually, it just means this was

11   a successful strike.

12         MS. KEBRIAEI:  Okay, but that is the case you have

13   before you.  The case you have before you is an ex-post case.

14   It is looking at facts in the past.  And as far as --

15         THE COURT:  Well, that's a legitimate point.

16         MS. KEBRIAEI:  As far as the defendant's cases in

17   relying on El-Shifa and PMOI to say that imminence is a

18   determination, is a political question determination when we're

19   talking about the Fourth Amendment and they concede the Fourth

20   Amendment applies and they concede the test is reasonableness

21   and they cite Garner.

22         THE COURT:  If I could just say, they haven't

23   actually conceded that.

24         MS. KEBRIAEI:  One would hope --

25         THE COURT:  Let's say that the Department of Justice

1    had a white paper, but their litigating position in this case

2    doesn't concede any of that.

3          MS. KEBRIAEI:  Well, Your Honor, one would hope there

4    would be consistency between the Justice Department's legal

5    analysis and the Justice Department attorneys asserting a

6    position in court and it just --

7          THE COURT:  But one is perhaps an overarching, this

8    is how we're going to approach it, and the other is a very

9    specific this is how we're going to defend it situation.  There

10   are always alternatives, you know.  You're a quite fine lawyer,

11   you understand that part.

12         MS. KEBRIAEI:  Your Honor, you know, defendants would

13   still as far as, you know, they would still say the Fourth

14   Amendment applies.  You know, when I say we agree on the

15   standards even if we didn't agree that imminence and last

16   resort are capture with a criteria, there would still be

17   standards.  They're not saying, and if that's their position

18   they should say it, but they're not saying that the Fourth and

19   Fifth Amendments don't apply.

20         THE COURT:  No, but what they are saying is that

21   there may be, it may be possible to articulate constitutional

22   rights for the deceased.

23         However, in this fact pattern, those constitutional

24   rights cannot be vindicated in court.  That's really what

25   they're saying.

```
 1          They don't want to say, no, they didn't have any

 2  constitutional rights.  They're just saying but Judge, you're

 3  not someone to evaluate whether those constitutional rights

 4  were violated because we went through this very complicated

 5  process before we did anything and we understood rights and we

 6  understand they were Americans and we were very careful about

 7  it and besides which we're at war.  Something like that.

 8          That was a quick summary, Mr. Hauck.  I don't quite pin

 9  you to my words.

10          MS. KEBRIAEI:  Your Honor, even accepting their

11  framework, even accepting the AUMF and even accepting that the

12  war powers were involved, that's Hamdi.  That is a situation

13  where you have shared powers, you have shared powers and the

14  Court maintains its roles.

15          THE COURT:  And your arguments are well presented

16  here as is the Government and well presented in your briefs.

17          Why don't you let your colleague speak some before your

18  time is up.

19          MS. KEBRIAEI:  Thank you, Your Honor.

20          THE COURT:  Thank you.  Hold on, I have to do this

21  right.  Ms. Kebriaei, did I say that right?

22          MS. SHAMSI:  That was Ms. Kebriaei and I'm Ms. Hina

23  Shamsi.

24          THE COURT:  I know that you're Ms. Shamsi.  I was

25  trying to pronounce Kebriaei.
```

1           MS. KEBRIAEI:  You said it perfect.

2           THE COURT:  Did I say it right?

3           MS. KEBRIAEI:  Yes.

4           THE COURT:  I was trying to pronounce her name

5    correctly.

6           Go ahead, Ms. Shamsi.

7           MS. SHAMSI:  Thank you, Your Honor.  Good morning.

8           You have been concerned throughout this argument, Your

9    Honor, with the question of limits.  The limits of our

10   positions, the limits of the Government's position.  So let me

11   just start out with that if I may before talking about Bivens

12   and qualified immunity to the extent that you have questions.

13          The limits that are part of our case is that this is not

14   a case about individuals who are on an actual battlefield.

15   Your hypothetical about Switzerland doesn't apply here.  And I

16   think it applies --

17          THE COURT:  I know that.  I was just trying to start

18   at the end and work into the middle.  I've never even got past

19   the end but it's okay.

20          MS. SHAMSI:  But I do want to acknowledge, Your

21   Honor, that that is a far more difficult case.  It's not likely

22   a case that we would have brought and it's not the case that we

23   have brought.

24          So I'm not taking away from your hypothetical.  I'm

25   acknowledging the extent to which it raises the kind of

1  difficult concerns that you have brought up and trying to argue

2  and show that those concerns aren't implicated here.

3       That what we're talking about is something that is not

4  on an actual battlefield and that is part of, a large part of

5  our concern with respect to the killings that are at issue

6  here.

7            THE COURT:  And I appreciate that concern.

8       But how does the United States or any power, any nation

9  deal with an enemy that is not a nation of national enemy, it

10  is not a traditional Army.  It is, it acts through small

11  groups, large or small but mostly fairly small groups,

12  scattered around the world, and to be found wherever they are

13  in fact found as opposed to where they might be because that's

14  where their headquarters is or something, they don't have

15  headquarters.

16       So if you were in fact defending against such an enemy,

17  how would you identify where the battlefield is?

18            MS. SHAMSI:  Your Honor, the law provides the answers

19  there and here this is another one of the limits that we are

20  seeking to enforce and that we think applies.

21       The law does not say that the Government cannot respond

22  to a genuine threat and we recognize that there are threats out

23  there.  It says that it can do so, but under cabined authority.

24       And outside the context of an armed conflict, that

25  authority permits the use of lethal force when there is a

1 specific concrete and imminent threat.  The importance of the

2 white paper that Ms. Kebriaei pointed out is that the

3 Government agrees with us.

4       Now where there's factual disagreement is with respect

5 to how the facts apply to the law.  That on this justiciability

6 set of arguments, Your Honor, is something for you to decide at

7 a merit stage.

8       Essentially the point is that the Government has the

9 tools, it had the legal authority but it is cabined legal

10 authority.  It is not unending, expansive legal authority.  One

11 of the ways --

12           THE COURT:  I was going to say you say when we get to

13 the merits.

14       What is in your mind the difference between this

15 argument and the merits because are you anticipating that if I

16 deny the motion to dismiss that you would then go into

17 discovery?

18           MS. SHAMSI:  Your Honor, that is a concern that

19 clearly the defendants have a great deal of trepidation or

20 concern about.

21       And the answer is that discovery is a normal part of

22 every case as Your Honor knows.  And to the extent that there

23 is a concern which has arisen in the context of Bivens cases

24 and I'll just address this here since it is where it most

25 rises, the Court has full capacity and capability to organize a

1  discovery plan, discovery may be limited.  There may be

2  interrogatories and there are ways of managing discovery for

3  cases to proceed for telling --

4       THE COURT:  Okay, what would you think necessary to

5  discover before a merits hearing?

6       MS. SHAMSI:  Your Honor, I'm quite frankly not

7  prepared to lay out a discovery plan now, but what I would say

8  is that at the justiciability stage it would be premature to

9  dismiss the case for fear of what discovery might bring.

10       THE COURT:  I don't disagree with that.  But the

11  point is, the argument is that the Court should not, even if it

12  could, should not proceed because of the complexity of

13  entangling the judiciary with these very delicate difficult

14  decisions made by the executive and the congressional branches

15  and so in that context, it matters whether you anticipate

16  discovery that would intrude into the time and the attention of

17  the individual defendants beyond what were your, you know, what

18  was your role having to do with this particular strike period.

19       MS. SHAMSI:  Right. Your Honor, first of all, just to

20  take your last point which is that this is a case very much

21  about this particular strike.  To the extent that courts in

22  other context especially in Bivens have raised concerns about

23  entangling with time, there have been concerns where entire

24  policies have been challenged by plaintiffs.  This is very much

25  about three particular strikes.  And with respect --

1          THE COURT:  Two I thought.

2          MS. SHAMSI:  Sorry, two strikes, three particular

3  descendant Americans.

4          With respect to your question about entangling and time

5  intention, Your Honor, what defendants have ignored is the fact

6  that high level officials, including some of the defendants

7  here, present their views to the Court all the time and provide

8  declarations, and affidavits in the form of, in Freedom of

9  Information Act cases.  They do it in the context of Guantanamo

10  cases, and the time that it would take is certainly something

11  that you might consider, but I would also say to you, Your

12  Honor, that the entire goal of Bivens, the remedy that we are

13  seeking here is deterrence.

14          And if the issue is as it is here that top level

15  officials have ordered the killing of their fellow citizens

16  then a few hours out to explain why those actions occurred is

17  not too much to ask.  There is no Leon Panetta exception to the

18  ability to answer for the killing of U.S. citizens.

19          THE COURT:  Well, there is no Presidential exception

20  for actions taken before the presidency, but there is an

21  exception during and about actions taken by a President.

22          And I think your argument is somewhat too easily stated

23  and too hard to imagine right now.  But you are correct, that

24  that's not the point of today's hearing.

25          Assuming for the moment that for purposes of this

1  question only, I hasten to add only for this question, even if

2  I were to agree with you when we get to Bivens it seems to me

3  that this is a stretch and it's a highly unusual case under

4  Bivens and everything that the D.C. Circuit has said putting

5  aside the Supreme Court would suggest that I shouldn't find a

6  remedy for your plaintiffs against these individual persons

7  under a Bivens analysis.

8          MS. SHAMSI:  And respectfully, Your Honor, I think

9  that the cases that you are concerned about and the defendants

10  cite none of them apply and none of them control here for a

11  number of key reasons.

12          And prime among them is that virtually all of those

13  cases and certainly the ones in the Circuit Doe and Rasul and

14  Ali, Doe and Ali were in the context of actual battlefield

15  situations, armed conflict in Iraq and Afghanistan, that is not

16  the situation here.  The Government has conceded that that's

17  not the situation here.

18          In most of the other cases citizenship was also a

19  factor.  And citizenship was a factor because courts were

20  concerned about the foreign affairs implications of drawing,

21  according rights to foreign citizens that might be vindicated

22  in U.S. courts.  There is no such concern here in this context.

23          In the other cases including Doe, there was an issue

24  with who the plaintiffs were who were bringing the lawsuit.  In

25  Doe, in a number of the other cases plaintiffs were military

1  personnel or military contractors who in the view of the courts

2  were no different from the military itself and those were

3  analyses that were conducted under the Stanley v. Chappell line

4  of cases.  No court has said, Your Honor, that Stanley and

5  Chappell apply to civilians whose contact with the military

6  comes only as a result of being killed by it.

7          To the contrary, Circuit and District Courts routinely

8  decide cases brought by civilians against the military.

9          Another distinguishing factor, Your Honor, is that in

10  those cases there was a concern that plaintiffs' challenge

11  would second guess entire policies or raise issues of

12  supervisory liability as opposed to a discreet set of facts.

13  Neither of those concerns is presented by our case.

14          And if I may go back though, Your Honor, to what the

15  general rule of Bivens is about.  One, that the Supreme Court

16  reaffirmed in Minneci last year.  The entire purpose, Your

17  Honor, of Bivens is to deter unconstitutional conduct.  The

18  Supreme Court has said over and over again and the D.C. Circuit

19  has said nothing different, it agreed.  It is a matter of

20  judgment for a Court to determine whether even if special

21  factors exist and counsel hesitation, a remedy should

22  nevertheless be applied.

23          And Your Honor this is, we submit, a quintessential

24  Bivens case because in this case, a case that involves the

25  deaths of U.S. citizens which makes this case different from

1  any other in the context that you have raised or that the

2  courts have discussed, it is a case that without Bivens

3  plaintiffs really have nothing.  They have no other source of

4  remedy to seek the Court's review of constitutionality of this

5  conduct.

6          THE COURT:  That is true, but as Schneider v.

7  Kissinger shows that doesn't mean that the absence of a remedy

8  requires approval of the case.  I mean there are instances

9  where wrongs are done, but for one reason or another they

10  cannot be remedied in a civil suit.

11          MS. SHAMSI:  That is indeed correct, Your Honor, but

12  the, it is also equally correct to say that in the Bivens

13  analysis the question becomes is there an alternative remedial

14  scheme and here there is none and do the special factors

15  counsel hesitation and for the reasons that I have discussed,

16  all of the cases in which courts have found special factors

17  counseling hesitation are different from this one.

18          And at bottom the key differences are based on death as

19  courts have said over and over again in a variety of context,

20  death is different.  This case does not involve an actual

21  battlefield situation.  So the concern about Your Honor looking

22  over the shoulders of military officials carrying out

23  activities simply isn't presented.

24          All of the four defendants are here in the United

25  States.  The facts that we have alleged have shown that there

1   was time and deliberation taken after for example, Anwar

2   Al-Aulaqi was put on kill list.  Years passed before he was

3   killed.  Surveillance was carried out for three weeks before he

4   was killed.  The kinds of hot battlefield concerns even if the

5   Government hadn't conceded that it is not a hot battlefield

6   simply don't apply here.

7        And I understand Your Honor's point about the

8   concession, but the issue is that when the Attorney General

9   sends a letter to Congress saying here are the standards that

10  we are applying and here are the ones that we are abiding by,

11  then it is also true, and tells the public the same thing, and

12  it is also true that the Government shouldn't be telling the

13  Court something different.

14            THE COURT:  All right, thank you, ma'am.

15            MS. SHAMSI:  Thank you, Your Honor.

16        But Your Honor, you had a quick question about immunity

17  and I wonder if I, I felt like I didn't answer that properly.

18            THE COURT:  All right.

19            MS. SHAMSI:  Because the consequence of, again we're

20  going back to limitations, the consequence of the Government's

21  arguments with both Bivens and immunity is a rule in which

22  there will be absolute immunity for the Government's killings

23  of an American citizen far from any battlefield and it doesn't

24  matter whether that citizen is Anwar Al-Aulaqi, a reporter or a

25  16 year old boy against whom no allegation of wrongdoing has

1  been made.

2       And the kinds of national security concerns that the

3  Government raises were raised and rejected by the, raised by

4  the Government and rejected by the Supreme Court in Mitchell v.

5  Forsyth.  The case that said Attorney General who claimed that

6  for national security reasons he could conduct unlawful

7  surveillance of an American citizen did not have absolute

8  immunity because the Court found in that case that in national

9  security context where secrecy is likely to result in, in

10 states being made or greater concerns about Government action

11 being taken, that immunity cannot be the rule.

12      And national security context especially where

13 Government officials may be zealous in carrying out their

14 duties and with that intent may not need to happen, the Court

15 still has a role to play in adjudicating whether or not a

16 citizen's rights have been violated.

17      And so when we talk about limits, when we end with

18 limits, the Government's argument is virtually without limits.

19 And that simply is not the law or the role of your court, Your

20 Honor.

21           THE COURT:  Thank you very much.

22           MS. SHAMSI:  Thank you.

23           THE COURT:  Mr. Hauck.

24           MR. HAUCK:  Your Honor, I'll try to be very brief.

25      Starting with one area of disagreement with the

1    plaintiffs.  Bivens remedy is not just -- the only

2    consideration is not whether we want to deter constitutional

3    rights as Bush v. Lucas goes on in some detail.  You also don't

4    want to deter federal officials from doing their jobs.  And as

5    Bush v. Lucas notes, the best entity to balance the deterrence

6    effect of a Bivens remedy in terms of preventing violation of

7    constitutional rights and allowing officials to do their jobs

8    is a decision made by Congress.  That's in the context of an

9    employment retaliation claim, the kind of case courts deal with

10   all the time.

11        A couple of things that we do agree with on the

12   plaintiffs, Your Honor.  First, we absolutely agree that

13   there's law to apply here.  The apply the Attorney General has

14   talked about the kinds of reviews that these decisions go

15   through.

16        What we disagree with is that the extent to which the

17   law was clearly established, sufficiently clearly established

18   in this context to put these officials on notice that they were

19   somehow doing something illegal.  We can quibble over whether

20   it's an armed conflict or not.  I think you can just look at

21   the plaintiff's complaint though and they are suing the

22   Secretary of Defense, two JSOC commanders and the Director of

23   the Central Intelligence Agency for launching a missile strike.

24   This is clearly a different context from the cases they are

25   citing.

1    How much force you use when you are dealing with a

2    diabetic who is acting strangely outside of a convenience

3    store.  So we're just in different worlds in terms of putting

4    these officials on notice of what kind of conduct would be

5    illegal.

6        We do agree that the Fourth Amendment standard were the

7    Court to reach it would be a reasonable standard.  And to spin

8    out an example of that, Your Honor, the plaintiffs raise

9    questions about whether there were other alternatives short of

10   lethal force with respect to either strike.

11       That kind of decision would have to look at what are the

12   consequences of those kind of, suppose a capture operation as

13   opposed to a strike.

14       The President said in his speech that he would have

15   preferred the capture of Al-Aulaqi, but we couldn't.  So for

16   the Court to get into that again, as the Court raised these

17   questions, how would the Court make that judgment?  Would it

18   involve depositions of Yemeni officials about the security

19   situation in their state, or the United States officials about

20   the security situation in their state.

21       These are extraordinarily difficult questions, and if

22   the Court were to reach a judgment about whether a different

23   kind of operation would have been feasible, it could be

24   potentially either consistent with the President's commander in

25   chief statement or in conflict.  So this would be a very

1  serious thing that go directly to the heart of the political

2  question.

3          THE COURT:  When you agree that the Fourth Amendment

4  standard is reasonableness, do you agree that there was a

5  seizure?

6          MR. HAUCK:  Your Honor, I think we absolutely agree

7  to the extent that the domestic law enforcement cases were

8  applicable here that the strike that got Mr. Al-Aulaqi was a

9  Fourth Amendment event and therefore a seizure.

10         With the other two individuals, I think it's less clear

11 in light of the by standard cases that we've discussed.

12         THE COURT:  Okay.

13         MR. HAUCK:  The last point I make, Your Honor, is the

14 questions that the Court would have to go into for example, on

15 this capture issue and the alternative being short of lethal

16 force is that those questions don't get any easier or less or

17 more into the Court's core competence because you are looking

18 retrospectively.  You still have to go through those judgments

19 and you still have to make the kind of pronouncement the Court

20 in El-Shifa and the fact that Judge Bates' decision recognized

21 would be part of that political question doctrine.

22         If there are no further questions, I'm happy to sit.

23         THE COURT:  I guess not.

24         I just had one other question.  The question of whether

25 the Government's position is that the AUMF applies to the

1  circumstances in Yemen or not?

2          MR. HAUCK:  It is our position that it does apply.

3          THE COURT:  All right, thank you, sir.

4          MR. HAUCK:  Thank you, Your Honor.

5          THE COURT:  Thank you everybody.

6      I do not consider this particularly easy set of

7  questions as I hope you understand that my questions to you

8  were merely to try to elicit the best help I could get while I

9  had a chance to actually talk to you live, and I will now do a

10  lot of reading and considering and studying and thinking and

11  will try to reach a decision as soon as I can.

12      Thank you very much for your advocacy and your legal

13  skills.  They're very helpful to me.

14          (Proceedings concluded at 11:30 a.m.)

15                          -oOo-

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATE

2        I certify that the foregoing is a true and correct

3   transcript, to the best of my ability, of the above pages, of

4   the stenographic notes provided to me by the United States

5   District Court, of the proceedings taken on the date and time

6   previously stated in the above matter.

7        I further certify that I am neither counsel for, related

8   to, nor employed by any of the parties to the action in which

9   this hearing was taken, and further that I am not financially

10  nor otherwise interested in the outcome of the action.

11  _____          _____

12  /s/Crystal M. Pilgrim, RPR            Date:  August 19, 2013

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 1:12-cv-01192-RMC Document 31 Filed 09/17/13

**—**

**1/7**
-ooo [1]   56/15

**/**
/s/Crystal [1]   57/12

**1**
10004-2400 [1]   1/16
10012 [1]   1/23
10:05 [1]   1/6
1192 [2]   1/4 3/2
11:30 [1]   56/14
12-1192 [2]   1/4 3/2
125 [1]   1/16
16 [5]   30/14 30/16 35/19
 35/23 51/25
18th [1]   1/16
19 [2]   1/6 57/12

**2**
20001 [1]   2/7
20008 [1]   1/19
20044 [1]   2/4
2009 [1]   29/2
2011 [1]   32/3
2013 [2]   1/6 57/12
2400 [1]   1/16

**3**
333 [1]   2/7

**4**
4301 [1]   1/18
434 [1]   1/19

**6**
666 [1]   1/22

**7**
7146 [1]   2/3

**A**
a.m [2]   1/6 56/14
Abdulrahman [4]   30/15
 35/23 35/23 36/16
abiding [1]   51/10
ability [5]   17/25 32/12
 38/9 47/18 57/3
able [3]   5/14 11/4 40/5
about [80]
above [2]   57/3 57/6
abroad [6]   7/23 9/4 10/22
 21/25 29/2 31/9
absence [2]   39/7 50/7
absolute [2]   51/22 52/7
absolutely [4]   38/2 38/9
 53/12 55/6
absolutes [1]   18/23
accept [3]   32/13 34/2
 35/12
accepting [4]   30/21 42/10
 42/11 42/11
accident [2]   19/7 20/25
accidental [2]   20/3 35/16
according [3]   16/5 34/15
 48/21
accustomed [1]   18/14
acknowledge [1]   43/20
acknowledges [2]   31/2

acknowledging [1]   43/25
actx [1]   10/2 17/25 23/24
 47/9
acting [3]   16/24 25/17
 54/2
action [7]   3/2 10/23
 16/21 28/11 52/10 57/8
 57/10
actions [5]   16/22 16/23
 47/16 47/20 47/21
active [9]   10/15 11/23
 12/10 18/4 31/3 32/20
 34/6 34/6 36/11
actively [1]   14/15
activities [1]   50/23
activity [2]   26/8 40/7
acts [1]   44/10
actual [6]   27/15 31/1
 43/14 44/4 48/14 50/20
actually [15]   4/19 6/10
 8/20 12/5 17/1 18/3 20/22
 22/19 25/8 35/4 37/21
 39/3 40/10 40/23 56/9
add [1]   48/1
address [5]   6/16 6/20
 8/19 10/9 45/24
addressing [1]   4/4
adjudicate [1]   11/16
adjudicating [2]   32/11
 52/15
adjudication [1]   7/13
Admiral [2]   5/21 6/3
advancing [1]   26/5
advice [1]   38/16
advisors [1]   25/17
advocacy [1]   56/12
affairs [1]   48/20
affidavits [1]   47/8
Afghanistan [4]   14/10
 33/6 38/4 48/15
after [4]   14/3 19/22
 19/23 51/1
again [14]   5/20 9/6 10/7
 27/4 29/3 29/4 29/4 29/20
 33/21 37/6 49/18 50/19
 51/19 54/16
against [17]   3/11 7/22
 12/18 12/19 17/9 22/23
 25/18 25/20 31/23 32/4
 33/18 35/24 40/7 44/16
 48/6 49/8 51/25
Agency [1]   53/23
agents [1]   11/7
ago [1]   37/25
agree [26]   12/12 12/13
 12/22 21/8 25/25 27/6
 31/16 32/19 32/20 33/15
 33/20 34/21 37/21 37/21
 37/22 37/22 37/23 41/14
 41/15 48/2 53/11 53/12
 54/6 55/3 55/4 55/6
agreed [2]   8/6 49/19
agreement [1]   31/10
agrees [1]   45/3
ahead [2]   5/18 43/6
aided [1]   2/10
air [1]   16/13
al [21]   1/3 1/3 1/6 3/3
 3/3 3/11 3/12 10/15 14/8
 19/2 20/25 23/3 32/2 32/7

34/20 38/24 40/6 51/2
 51/24 54/25 55/8
AL-AULAQI [8]   1/3 3/3
 3/12 10/15 19/2 51/2
 51/24 54/15
Ali [5]   17/23 18/1 24/14
 48/14 48/14
all [38]   3/10 4/21 4/25
 5/12 5/15 5/18 8/19 11/13
 12/12 13/19 13/25 14/19
 15/15 16/13 17/8 18/10
 18/24 21/8 24/21 25/2
 26/9 26/20 29/11 30/2
 31/15 32/20 34/15 38/7
 40/4 46/19 47/7 48/12
 50/16 50/24 51/14 51/18
 53/10 56/3
allegation [1]   51/25
allege [8]   21/4 21/5
 32/24 35/11 35/22 35/22
 35/25 36/9
alleged [1]   50/25
alleging [1]   39/11
allotment [1]   4/16
allowing [1]   53/7
almost [1]   4/21
alongside [1]   33/6
also [16]   6/20 21/2 27/12
 28/23 30/5 31/10 32/6
 34/1 38/16 39/15 47/11
 48/18 50/12 51/11 51/12
 53/3
alternative [3]   16/21
 50/13 55/15
alternatives [3]   28/20
 41/10 54/9
although [3]   6/3 10/9
 26/9
always [1]   41/10
am [3]   15/25 57/7 57/9
Amendment [28]   21/22
 21/24 22/5 22/6 22/10
 22/12 30/20 31/18 31/19
 31/24 33/25 36/5 36/8
 36/20 36/25 37/1 37/2
 37/12 37/14 39/14 39/19
 39/21 40/19 40/20 41/14
 54/6 55/3 55/9
Amendments [5]   31/6 31/9
 37/21 38/7 41/19
American [16]   1/15 1/18
 8/15 13/5 15/8 15/9 15/10
 16/6 30/18 30/21 31/7
 31/9 31/23 33/5 51/23
 52/7
Americans [2]   42/6 47/3
among [1]   48/12
amount [1]   15/18
analyses [1]   49/3
analysis [14]   7/15 10/21
 19/22 20/2 20/7 20/11
 20/18 21/10 24/9 36/24
 38/13 41/5 48/7 50/13
analyze [3]   10/3 10/24
 11/10
analyzing [1]   11/2
another [4]   23/13 44/19
 49/9 50/9
answer [9]   7/18 9/10
 10/12 16/15 21/2 26/16
 45/21 47/18 51/17

answered [1]   22/21
answers [2]   5/15 44/18
anticipate [1]   46/15
anticipating [1]   45/15
Anwar [2]   51/1 51/24
any [26]   5/7 11/25 12/11
 13/24 16/9 21/17 24/23
 25/6 26/12 26/13 28/21
 30/12 30/13 30/22 30/25
 32/20 34/6 34/16 41/2
 42/1 44/8 44/8 50/1 51/23
 55/16 57/8
anybody [1]   24/23
anything [2]   30/16 42/5
Anyway [1]   15/12
anywhere [1]   11/18
apparatus [2]   10/24 11/6
APPEARANCES [2]   1/13 2/1
applicable [1]   55/8
applied [4]   15/2 34/18
 34/19 49/22
applies [9]   21/25 22/5
 32/21 33/10 40/20 41/14
 43/16 44/20 55/25
apply [18]   7/18 8/8 17/14
 22/23 25/14 34/21 37/13
 37/22 38/7 41/19 43/15
 45/5 48/10 49/5 51/6
 53/13 53/13 56/2
applying [3]   7/14 37/18
 51/10
appreciate [1]   44/7
approach [2]   10/17 41/8
appropriate [4]   8/25
 14/13 28/7 35/4
approval [1]   50/8
approve [3]   28/13 28/14
 28/16
AQAP [2]   9/5 34/20
Arabian [1]   40/6
are [113]
area [6]   24/24 31/3 34/5
 36/10 36/11 52/25
areas [1]   29/21
aren't [5]   11/4 11/9
 18/16 30/9 44/2
argue [3]   30/2 38/11 44/1
argued [1]   16/4
arguendo [1]   40/4
arguing [4]   8/6 26/3
 34/12 34/13
argument [27]   3/22 6/10
 11/21 15/24 15/25 16/11
 16/12 20/5 20/10 20/12
 20/14 22/22 22/25 25/15
 25/16 26/3 26/9 26/19
 27/19 37/1 37/10 40/9
 43/8 45/15 46/11 47/22
 52/18
arguments [10]   4/3 9/17
 30/6 30/9 30/22 36/25
 39/5 42/15 45/6 51/21
arisen [1]   45/23
arises [1]   29/3
armed [5]   32/18 32/23
 44/24 48/15 53/20
arms [2]   12/18 33/18
Army [3]   12/7 33/17 44/10
around [4]   26/12 32/4

32/5 44/12
ARTHUR [2]   1/17 3/4
Article [3]   8/7 11/20
 39/10
Articles [1]   8/7
articulate [1]   41/21
as [43]   5/23 6/11 8/5
 10/10 11/12 13/14 13/14
 19/2 20/3 20/3 20/13
 22/17 24/22 25/22 27/18
 28/17 30/17 32/6 32/25
 32/20 36/16 39/6 40/14
 40/14 40/16 40/16 41/13
 41/13 42/16 44/13 45/22
 47/14 49/6 49/12 50/6
 50/18 53/3 53/4 54/12
 54/16 56/7 56/11 56/11
aside [1]   48/5
ask [3]   10/17 13/25 47/11
asked [1]   18/6
aspect [1]   28/21
assert [5]   11/18 11/19
 27/3 27/7 33/25
asserted [3]   22/20 31/20
 39/19
asserting [2]   15/7 41/5
assertion [1]   16/1
asserts [1]   32/16
associated [1]   34/20
assume [3]   36/1 36/15
 40/4
assuming [4]   22/4 36/2
 36/2 47/25
attach [1]   31/9
attacked [2]   32/2 32/5
attention [1]   46/16
Attorney [5]   31/1 32/19
 51/8 52/5 53/13
attorneys [1]   41/5
audience [1]   6/9
August [1]   57/12
AULAQI [12]   1/3 3/3 3/11
 3/12 10/15 14/8 19/2
 20/25 51/2 51/24 54/15
 55/8
Aulaqi's [1]   23/3
AUMF [10]   31/20 32/13
 32/21 33/9 33/10 34/18
 34/19 35/10 42/11 55/25
authority [9]   16/2 28/20
 31/5 31/7 44/23 44/25
 45/9 45/10 45/10
available [3]   23/13 36/8
 40/8
avenue [4]   1/18 2/7 7/3
 27/24
avoidance [1]   23/14
avoiding [1]   24/19
aware [2]   7/6 14/7
away [1]   43/24
AZMY [1]   1/21

B

back [4]   22/22 34/1 49/14
 51/20
BAHER [1]   1/21
Baker [1]   7/18
balance [1]   53/5
banc [1]   39/8
Bar [1]   5/5
barred [6]   14/20 14/24

23/21 23/21 23/22 23/23
bars [3]   9/9 8/17 23/23 23/25
based [1]   50/18
basic [1]   30/10
Bates [2]   9/2 9/11
Bates' [1]   55/20
battle [4]   12/7 12/10
 12/20 12/20
battlefield [11]   30/12
 33/5 33/17 43/14 44/4
 44/17 48/14 50/21 51/4
 51/5 51/23
be [84]
because [24]   12/20 16/11
 19/1 19/9 20/15 21/2
 23/23 23/23 25/9 29/9
 32/22 34/16 36/4 37/10
 39/24 42/4 44/13 45/15
 46/12 48/19 49/24 51/19
 52/8 55/17
become [1]   37/20
becomes [1]   50/13
been [16]   5/4 9/4 12/6
 17/12 18/8 19/7 21/19
 22/8 40/1 40/7 43/8 46/23
 46/24 52/1 52/16 54/23
before [16]   1/10 3/7 14/8
 22/14 23/1 30/6 30/23
 40/13 40/13 42/5 42/17
 43/11 46/5 47/20 51/2
 51/3
begin [5]   3/7 6/6 24/12
 24/15 30/5
beginning [2]   8/21 24/16
being [12]   14/7 14/8
 18/21 18/22 26/4 27/5
 28/25 40/5 49/6 52/10
 52/11 55/15
believe [5]   3/17 15/1
 27/17 32/15 34/12
belligerent [3]   10/16
 12/6 40/7
belong [1]   17/5
besides [1]   42/7
best [4]   26/13 53/5 56/8
 57/3
better [2]   3/25 39/23
between [3]   35/15 41/4
 45/14
beyond [2]   10/18 46/17
big [1]   4/9
Bivens [27]   4/5 4/8 4/17
 4/20 4/20 15/3 17/11
 17/17 20/15 22/22 22/23
 30/7 43/15 45/23 46/22
 47/12 48/2 48/4 48/7
 49/15 49/17 49/24 50/2
 50/12 51/21 53/1 53/6
body [1]   24/2
both [1]   51/21
bottom [1]   50/18
Box [1]   2/3
boy [2]   30/16 51/25
branch [4]   6/24 13/25
 25/8 30/11
branches [10]   14/12 14/13
 25/5 29/20 32/24 33/1
 33/7 35/7 39/24 46/14
BRETT [2]   1/14 3/4
BRIAN [4]   2/2 3/6 3/17
 5/20

**B**        Case 1:12-cv-01192-RMC    Document 37, Filed 09/17/18

**brief [11]**   14/22 19/1
 21/17 30/5 31/12 31/12
 35/3 35/4 37/3 37/6 52/24
**briefed [1]**   14/8
**briefing [2]**   37/20 38/1
**briefly [1]**   19/11
**briefs [1]**   42/16
**bring [4]**   26/20 28/11
 39/6 46/9
**bringing [1]**   48/24
**broad [2]**   1/16 27/14
**broader [1]**   8/23
**broadly [3]**   13/14 15/7
 34/14
**Broadway [1]**   1/22
**brought [6]**   3/11 28/13
 43/22 43/23 44/1 49/8
**building [1]**   17/22
**built [1]**   11/6
**Bush [2]**   53/3 53/5
**bystander [1]**   36/16
**bystanders [1]**   22/7

**C**

**CA [1]**   1/4
**cabined [3]**   15/6 44/23
 45/9
**call [2]**   23/12 33/2
**called [2]**   18/4 32/3
**can [37]**   3/24 8/15 10/9
 10/18 11/15 13/3 16/7
 16/8 17/5 21/2 21/12 22/1
 22/16 22/17 22/17 22/19
 25/20 26/13 26/24 26/25
 28/4 28/6 28/8 28/13
 29/15 30/18 34/12 34/17
 36/15 37/5 37/6 38/17
 39/9 44/23 53/19 53/20
 56/11
**can't [6]**   11/18 26/20
 29/15 30/19 34/10 37/10
**cannot [10]**   7/3 13/25
 19/16 20/15 27/19 28/3
 41/24 44/21 50/10 52/11
**capability [1]**   45/25
**capacity [2]**   17/21 45/25
**Capital [1]**   25/24
**caption [1]**   7/16
**capture [7]**   35/1 39/1
 39/4 41/16 54/12 54/15
 55/15
**captured [1]**   33/5
**careful [1]**   42/6
**carefully [1]**   33/13
**Carr [1]**   7/19
**carried [1]**   51/3
**carrying [2]**   50/22 52/13
**case [52]**   5/4 6/7 6/17
 7/2 7/16 7/25 9/2 9/12
 13/9 14/6 14/22 15/22
 16/16 17/6 17/17 23/19
 24/1 24/15 26/24 26/25
 27/14 27/15 30/9 30/24
 32/12 39/7 39/12 40/3
 40/12 40/13 40/13 41/1
 43/13 43/14 43/21 43/22
 43/22 45/22 46/9 46/20
 48/3 49/13 49/24 49/24
 49/24 49/25 50/2 50/8

**cases [39]**   17/1 17/22
 18/10 18/11 18/19 20/15
 22/4 22/7 22/8 23/22
 31/12 33/23 35/3 37/3
 37/6 37/18 37/19 37/22
 37/23 38/20 40/16 45/23
 46/3 47/9 47/10 48/9
 48/13 48/18 48/23 48/25
 49/4 49/8 49/10 50/16
 53/24 55/7 55/11
**casualty [1]**   37/4
**caught [1]**   22/7
**cause [1]**   28/10
**Center [1]**   1/22
**Central [1]**   53/23
**certain [1]**   7/9
**certainly [3]**   21/25 47/10
 48/13
**CERTIFICATE [1]**   57/1
**certify [2]**   57/2 57/7
**cetera [1]**   15/4
**challenge [1]**   49/10
**challenged [1]**   46/24
**challenging [1]**   39/17
**chance [1]**   56/9
**change [2]**   9/8 39/2
**Chappell [2]**   49/3 49/5
**check [3]**   13/3 13/22 14/1
**checks [1]**   13/17
**chief [1]**   54/25
**Circuit [10]**   7/21 10/21
 17/12 18/8 18/16 24/15
 48/4 48/13 49/7 49/18
**circumstance [1]**   23/4
**circumstances [3]**   15/16
 31/8 56/1
**cite [12]**   31/12 34/23
 34/23 35/3 37/2 37/17
 37/18 39/6 39/12 39/15
 40/21 48/10
**cites [1]**   31/12
**citing [1]**   53/25
**citizen [23]**   8/15 9/3
 9/21 9/22 12/24 13/7 15/8
 15/9 15/10 19/12 19/23
 19/24 20/20 23/4 23/12
 25/22 26/20 29/2 29/16
 33/5 51/23 51/24 52/7
**citizen's [1]**   52/16
**citizens [16]**   8/1 8/2 9/1
 16/6 18/24 19/5 30/11
 31/7 31/9 31/23 33/15
 39/14 47/15 47/18 48/21
 49/25
**citizenship [8]**   8/22 9/8
 14/18 15/10 15/11 33/24
 48/18 48/19
**civil [4]**   1/15 1/18 3/2
 50/10
**civilian [2]**   5/24 36/10
**civilians [2]**   49/5 49/8
**claim [24]**   9/25 11/16
 12/11 14/23 16/10 17/1
 20/20 21/16 21/22 23/2
 23/3 23/6 23/9 23/10
 23/11 23/12 24/3 28/11
 28/12 28/20 35/20 39/16
 39/21 53/9
**claimed [1]**   52/5
**claims [10]**   7/17 10/2

**19/10 21/13 23/24 33/12
 38/10 38/9 39/7 39/12 39/14**
**clarity [1]**   15/3
**clause [1]**   18/13
**clear [14]**   7/15 17/12
 18/8 26/2 26/22 28/22
 28/23 32/18 33/3 33/7
 33/23 35/21 38/2 55/10
**clearly [10]**   21/25 22/15
 22/18 24/13 24/14 30/7
 45/19 53/17 53/17 53/24
**close [3]**   16/20 19/8
 20/23
**co [1]**   30/7
**co-counsel [1]**   30/7
**coffee [1]**   19/25
**collateral [2]**   18/25 19/3
**colleague [1]**   42/17
**colleagues [1]**   5/3
**COLLYER [1]**   1/10
**COLUMBIA [1]**   1/1
**combat [1]**   34/6
**combatant [2]**   38/20 39/1
**come [4]**   3/24 4/21 5/14
 10/2
**comes [2]**   13/23 49/6
**Command [1]**   6/5
**commander [2]**   18/1 54/24
**commanders [2]**   18/3 53/22
**commanding [1]**   6/4
**commitment [3]**   31/18
 32/23 39/10
**committed [4]**   7/10 7/24
 9/6 31/25
**committee [1]**   25/25
**committees [2]**   8/14 14/7
**comparable [1]**   39/9
**competence [5]**   7/11 7/12
 7/24 17/5 55/17
**complaint [3]**   6/22 35/22
 53/21
**completely [2]**   26/6 34/5
**complexity [1]**   46/12
**complicated [1]**   42/4
**comport [1]**   37/11
**computer [1]**   2/10
**computer-aided [1]**   2/10
**concede [4]**   34/19 40/19
 40/20 41/2
**conceded [3]**   40/23 48/16
 51/5
**concedes [1]**   34/5
**concept [1]**   23/13
**concepts [1]**   24/22
**concern [9]**   29/19 44/5
 44/7 45/18 45/20 45/23
 48/22 49/10 50/21
**concerned [4]**   17/7 43/8
 48/9 48/20
**concerns [11]**   16/12 19/19
 36/15 44/1 44/2 46/22
 46/23 49/13 51/4 52/2
 52/10
**concession [1]**   51/8
**concluded [2]**   7/21 56/14
**concrete [1]**   45/1
**conduct [5]**   26/4 49/17
 50/5 52/6 54/4
**conducted [1]**   49/3
**conflict [8]**   32/17 32/18
 32/23 34/4 44/24 48/15

C    Case 1:12-cv-01192-RMC

**conflict... [2]   53/20**
 **54/25**
**Congress [28]   6/20 6/24**
 **7/6 7/11 8/5 9/7 10/25**
 **11/11 14/7 14/11 15/8**
 **16/6 17/10 23/6 23/6 23/9**
 **24/5 26/14 27/9 28/1 28/3**
 **28/13 28/14 28/21 29/7**
 **38/17 51/9 53/8**
**congressional [3]   14/5**
 **25/25 46/14**
**Connecticut [1]   1/18**
**consequence [2]   51/19**
 **51/20**
**consequences [9]   8/23**
 **11/2 16/21 16/22 16/24**
 **19/3 19/3 19/20 54/12**
**consequential [1]   24/17**
**consider [6]   25/9 29/12**
 **34/15 34/16 47/11 56/6**
**consideration [1]   53/2**
**considerations [1]   18/19**
**considering [2]   25/18**
 **56/10**
**consistency [1]   41/4**
**consistent [1]   54/24**
**constitution [10]   2/7 8/8**
 **10/5 10/5 14/12 18/12**
 **25/3 28/4 28/5 29/22**
**Constitution's [1]   31/17**
**constitutional [46]   1/22**
 **9/20 9/23 10/10 11/13**
 **11/15 11/17 11/19 12/11**
 **12/15 12/25 13/23 14/19**
 **14/19 14/24 20/2 20/7**
 **20/18 21/10 22/20 23/11**
 **23/12 24/3 24/4 24/19**
 **25/4 26/20 26/23 27/2**
 **27/5 27/12 27/21 27/22**
 **28/11 28/12 36/6 36/17**
 **39/7 39/16 39/21 41/21**
 **41/23 42/2 42/3 53/2 53/7**
**constitutionality [1]**
 **50/4**
**constrains [1]   25/1**
**contact [1]   49/5**
**context [26]   17/11 18/15**
 **18/23 23/17 32/16 33/9**
 **34/2 35/5 35/9 35/11 38/3**
 **38/13 44/24 45/23 46/15**
 **46/22 47/9 48/14 48/22**
 **50/1 50/19 52/9 52/12**
 **53/8 53/18 53/24**
**continued [2]   2/1 32/4**
**continuing [3]   39/24 40/2**
 **40/9**
**contract [1]   32/15**
**contractors [1]   49/1**
**contracts [1]   35/8**
**contrary [1]   49/7**
**control [1]   48/10**
**convenience [1]   54/2**
**core [3]   6/8 7/11 55/17**
**correct [9]   3/15 6/1**
 **10/19 29/25 39/4 47/23**
 **50/11 50/12 57/2**
**correctly [1]   43/5**
**could [21]   4/9 6/14 8/12**
 **9/24 12/24 13/7 21/19**

**28/23 40/22 46/12 52/6**
 **54/23 56/8**
**couldn't [1]   54/15**
**counsel [8]   5/6 6/19 17/9**
 **30/7 38/16 49/21 50/15**
 **57/7**
**counseling [1]   50/17**
**counterterrorism [1]**
 **17/19**
**country [6]   5/24 8/16**
 **11/24 11/24 12/1 23/24**
**couple [3]   8/13 8/18**
 **53/11**
**course [3]   8/1 18/21**
 **24/21**
**court [74]**
**Court's [9]   7/23 14/4**
 **14/14 20/16 29/18 31/18**
 **33/12 50/4 55/17**
**courthouse [2]   15/13**
 **15/14**
**courts [26]   8/8 10/20**
 **10/20 10/23 11/4 11/9**
 **11/15 14/19 17/4 17/23**
 **18/13 18/15 23/20 24/2**
 **27/5 28/17 31/15 46/21**
 **48/19 48/22 49/1 49/7**
 **50/2 50/16 50/19 53/9**
**covert [1]   11/8**
**cow [3]   3/8 3/9 3/9**
**create [4]   7/7 23/6 28/10**
 **29/5**
**created [1]   23/9**
**creating [4]   6/19 17/9**
 **18/7 29/5**
**criteria [4]   35/2 37/19**
 **37/24 41/16**
**CRYSTAL [2]   2/5 57/12**

**D**

**D.C [9]   1/5 2/4 7/21**
 **10/20 17/12 18/8 18/16**
 **48/4 49/18**
**damages [1]   7/4**
**danger [3]   8/16 16/8**
 **38/12**
**dangerous [1]   30/10**
**dangers [1]   17/24**
**date [2]   57/5 57/12**
**daylight [1]   37/24**
**DC [2]   1/19 2/7**
**deal [4]   11/4 44/9 45/19**
 **53/9**
**dealing [3]   8/24 18/14**
 **54/1**
**dealt [1]   22/25**
**death [5]   19/1 20/8 23/14**
 **50/18 50/20**
**deaths [2]   20/10 49/25**
**deceased [4]   10/15 20/25**
 **21/2 41/22**
**decide [13]   8/12 8/15**
 **9/15 12/5 16/4 16/7 25/20**
 **28/2 28/6 28/8 36/3 45/6**
 **49/8**
**decided [2]   9/12 16/11**
**deciding [2]   35/9 38/17**
**decision [14]   7/22 7/23**
 **9/13 9/16 11/1 14/7 14/9**

**decisions [7]   6/23 7/20**
 **11/3 14/3 17/22 46/14**
 **53/14**
**decisively [1]   17/25**
**declaration [1]   23/15**
**declarations [1]   47/8**
**declined [1]   7/6**
**defamation [1]   39/12**
**defeat [1]   18/6**
**defend [1]   41/9**
**defendant's [7]   4/4 30/6**
 **30/17 30/22 32/13 37/9**
 **40/16**
**defendants [17]   1/7 2/2**
 **3/21 4/3 5/23 31/17 31/22**
 **35/3 36/1 39/6 41/12**
 **45/19 46/17 47/5 47/6**
 **48/9 50/24**
**defendants' [1]   30/9**
**defending [1]   44/16**
**defense [4]   3/6 6/25 13/3**
 **53/22**
**deliberation [1]   51/1**
**delicate [3]   7/5 24/17**
 **46/13**
**deny [1]   45/16**
**Department [4]   2/3 5/3**
 **40/25 41/5**
**Department's [2]   31/6**
 **41/4**
**depending [2]   20/20 32/15**
**depends [1]   18/19**
**depositions [2]   18/5**
 **54/18**
**depriving [1]   30/21**
**descendant [2]   19/7 47/3**
**descendants [2]   12/4**
 **33/15**
**describe [3]   13/14 21/16**
 **24/22**
**described [1]   28/24**
**design [1]   24/4**
**designation [2]   39/17**
 **39/18**
**detail [1]   53/3**
**detained [2]   18/21 18/22**
**detainee [2]   18/20 18/22**
**detention [5]   18/11 18/15**
 **18/15 18/18 18/20**
**deter [3]   49/17 53/2 53/4**
**determination [5]   35/8**
 **38/25 39/23 40/18 40/18**
**determinations [3]   38/14**
 **38/20 38/21**
**determine [4]   36/7 37/8**
 **37/12 49/20**
**determined [1]   9/4**
**determining [3]   27/15**
 **38/22 38/24**
**deterrence [2]   47/13 53/5**
**deterring [3]   27/11 27/11**
 **27/13**
**diabetic [1]   54/2**
**dialogue [3]   7/1 7/3 28/1**
**dictates [1]   14/12**
**did [5]   33/19 42/5 42/21**
 **43/2 52/7**
**didn't [8]   6/18 9/13 9/14**
 **12/9 19/5 41/15 42/1**

## D

didn't... [1]   51/17
died [1]   6/12
difference [3]   10/4 19/7
 45/14
differences [1]   50/18
different [15]   6/6 19/10
 20/3 21/13 26/24 40/3
 49/2 49/19 49/25 50/17
 50/20 51/13 53/24 54/3
 54/22
differential [1]   33/3
difficult [4]   43/21 44/1
 46/13 54/21
difficulty [2]   9/9 9/19
directly [4]   6/7 20/7
 31/16 55/1
Director [3]   5/21 6/2
 53/22
disagree [3]   32/9 46/10
 53/16
disagreement [5]   31/13
 31/14 38/1 45/4 52/25
disconcerting [1]   16/5
discover [1]   46/5
discovery [8]   45/17 45/21
 46/1 46/1 46/2 46/7 46/9
 46/16
discreet [1]   49/12
discussed [3]   50/2 50/15
 55/11
discussing [1]   31/7
dismiss [3]   3/10 45/16
 46/9
dispositive [1]   6/19
dispositively [1]   17/9
dispute [4]   27/15 30/25
 31/4 32/21
disputing [1]   38/6
disrespect [1]   13/24
distinction [2]   26/10
 35/15
distinguishing [1]   49/9
distracted [1]   17/20
DISTRICT [6]   1/1 1/1 1/11
 2/6 49/7 57/5
divide [3]   3/22 4/2 4/15
dividing [1]   4/2
do [29]   4/9 10/25 14/19
 21/4 21/8 21/16 22/16
 22/17 25/9 25/24 28/21
 29/16 32/9 33/20 34/14
 35/12 37/11 42/20 43/20
 44/23 46/18 47/9 50/14
 53/7 53/11 54/6 55/4 56/6
 56/9
Docket [1]   1/4
doctrine [18]   4/5 6/16
 6/17 6/18 7/8 9/10 10/8
 10/11 13/11 13/14 14/21
 14/25 15/2 17/8 19/20
 23/23 30/23 55/21
doctrines [1]   14/20
Doe [7]   17/15 17/22 19/12
 48/13 48/14 48/23 48/25
does [13]   7/20 8/12 9/21
 11/21 13/16 23/11 26/9
 35/20 37/16 44/8 44/21
 50/20 56/2
doesn't [16]   7/15 9/8
9/20 28/13 32/14 33/1
33/11 33/11 34/20 35/13
37/11 40/10 41/2 43/15
50/7 51/23
doing [4]   27/13 30/15
 53/4 53/19
domestic [4]   22/4 26/8
 37/14 55/7
don't [33]   4/3 5/7 6/13
 9/18 10/23 12/2 12/2
 15/10 15/15 17/19 19/9
 22/2 22/3 25/25 26/12
 26/12 26/18 28/17 34/16
 35/25 36/2 36/14 37/11
 39/1 41/19 42/1 42/8
 42/17 44/14 46/10 51/6
 53/3 55/16
done [6]   5/12 5/13 5/15
 24/23 34/17 50/9
door [2]   15/13 15/14
doubt [3]   10/7 32/2 32/6
down [1]   25/12
drawing [2]   37/19 48/20
drone [1]   40/1
dual [2]   15/9 15/11
due [11]   12/24 13/5 13/8
 13/9 14/22 14/23 21/15
 21/17 23/12 30/21 33/20
during [1]   47/21
duties [1]   52/14

## E

each [1]   29/8
easier [1]   55/16
easily [1]   47/22
easy [3]   11/24 21/21 56/6
eating [1]   36/10
effect [2]   29/6 53/6
effective [1]   13/22
effects [1]   22/11
either [8]   22/16 22/17
 22/17 24/12 32/22 34/11
 54/10 54/24
El [5]   7/21 8/22 39/6
 40/17 55/20
El-Shifa [5]   7/21 8/22
 39/6 40/17 55/20
elicit [1]   56/8
else [4]   11/19 20/22 21/1
 40/10
employed [1]   57/8
employment [1]   53/9
empty [1]   30/22
en [1]   39/8
encompassed [1]   8/23
end [12]   9/12 23/2 25/16
 25/24 26/1 26/13 27/5
 27/20 28/18 43/18 43/19
 52/17
ends [1]   25/23
enemy [6]   16/8 38/20 39/1
 44/9 44/9 44/16
enforce [1]   44/20
enforcement [3]   22/4 22/7
 55/7
enforcing [1]   31/19
engaged [4]   7/6 14/11
 40/6 40/7
entangling [3]   46/13
 46/23 47/4
entire [4]   46/23 47/12
entirely [3]   15/2 17/13
 29/19
entity [1]   53/5
entrusted [1]   29/7
entrusting [2]   24/4 29/19
environment [1]   37/15
equally [2]   4/15 50/12
especially [2]   46/22
 52/12
Esquire [9]   1/14 1/14
 1/15 1/17 1/20 1/21 1/21
 2/2 2/2
Essentially [1]   45/8
establish [2]   30/8 37/3
established [8]   22/1
 22/15 22/18 24/2 24/13
 24/23 53/17 53/17
et [4]   1/3 1/6 3/3 15/4
evaluate [1]   42/3
even [33]   4/21 6/18 14/6
 17/7 17/7 18/15 20/19
 22/18 22/20 26/20 29/12
 30/15 31/9 32/12 33/4
 33/7 33/23 35/11 35/12
 36/3 36/14 36/15 37/4
 38/13 41/15 42/10 42/11
 42/11 43/18 46/11 48/1
 49/20 51/4
event [4]   22/6 22/11
 22/12 55/9
events [3]   22/7 23/17
 23/18
ever [2]   30/12 30/19
every [4]   14/9 14/9 24/3
 45/22
everybody [2]   25/12 56/5
everything [3]   9/15 28/18
 48/4
evidence [1]   30/12
evident [1]   37/20
ex [1]   40/13
ex-post [1]   40/13
exactly [2]   4/13 35/2
example [6]   33/13 33/14
 33/14 51/1 54/8 55/14
except [4]   9/11 11/20
 11/25 18/19
exception [4]   23/25 47/17
 47/19 47/21
excuse [2]   14/9 18/11
executing [1]   22/24
executive [20]   6/24 7/10
 7/24 9/6 10/24 11/10
 13/20 13/22 13/22 13/25
 14/1 15/7 16/5 24/5 25/1
 30/11 30/18 38/15 38/15
 46/14
executive's [1]   17/5
exercised [1]   12/9
exist [4]   15/4 37/11
 37/12 49/21
exists [1]   28/16
expand [1]   32/15
expansive [1]   45/10
expertise [1]   11/6
explain [3]   27/19 30/19
 47/16
extend [1]   15/3
extensive [3]   13/19 14/3
 14/5

**E**

extent [7]   21/10 43/12
 43/25 45/22 46/21 53/16
 55/7
extinguish [1]   35/13
extraordinarily [2]   17/4
 54/21
extraordinary [4]   15/22
 18/7 29/4 29/21

**F**

fact [13]   8/5 11/1 11/5
 18/11 19/17 24/22 28/19
 32/6 41/23 44/13 44/16
 47/5 55/20
factor [3]   48/19 48/19
 49/9
factors [10]   6/18 7/19
 10/9 14/21 19/20 20/7
 23/22 49/21 50/14 50/16
facts [11]   6/10 15/23
 16/1 20/8 38/22 39/1
 39/25 40/14 45/5 49/12
 50/25
factual [4]   6/12 35/5
 38/3 45/4
fairly [1]   44/11
family [1]   23/3
far [8]   11/21 30/11 34/3
 40/14 40/16 41/13 43/21
 51/23
favor [1]   4/9
fear [1]   46/9
feasible [2]   35/1 54/23
February [1]   37/25
federal [5]   10/2 23/24
 27/13 29/6 53/4
fellow [1]   47/15
felt [1]   51/17
fence [2]   24/25 26/12
Ferris [1]   23/23
fettering [1]   18/1
few [1]   47/16
field [1]   18/1
Fifth [15]   30/20 31/6
 31/9 31/18 31/19 31/24
 33/25 36/5 36/25 37/21
 38/6 39/14 39/19 39/20
 41/19
fighting [1]   34/6
figure [2]   15/6 36/14
file [1]   9/25
filed [1]   3/10
financially [1]   57/9
find [4]   16/4 33/10 34/19
 48/5
fine [3]   34/11 34/12
 41/10
finished [1]   16/11
firm [3]   12/3 17/13 18/8
first [11]   3/13 6/16 8/5
 8/21 13/19 17/1 20/19
 25/2 30/2 46/19 53/12
fit [1]   7/12
flag [1]   18/10
Floor [2]   1/16 1/22
focus [1]   31/21
follow [2]   25/13 25/14
followed [1]   6/7
force [12]   9/6 25/16 31/5

31/23 35/24 37/3 37/5
37/8 44/25 54/1 54/10
55/16
foregoing [1]   57/2
foreign [20]   7/5 7/12
 7/22 9/1 9/19 9/20 9/22
 11/2 11/7 16/22 17/18
 22/24 23/24 23/24 24/18
 39/11 39/17 39/18 48/20
 48/21
forget [1]   20/19
forgive [1]   40/5
form [1]   47/8
former [2]   5/20 5/21
Forsyth [1]   52/5
forward [1]   5/14
found [4]   44/12 44/13
 50/16 52/8
four [2]   27/16 50/24
Fourth [29]   21/22 21/24
 22/5 22/6 22/10 22/12
 31/5 31/8 31/24 33/25
 36/5 36/8 36/19 37/1 37/2
 37/12 37/13 37/14 37/21
 38/6 39/13 39/20 40/19
 40/19 41/13 41/18 54/6
 55/3 55/9
framework [2]   29/21 42/11
frank [1]   26/9
frankly [1]   46/6
Freedom [1]   47/8
Friday [1]   1/6
full [2]   28/20 45/25
fully [1]   7/6
fundamental [1]   31/13
further [4]   7/1 55/22
 57/7 57/9
furthermore [1]   39/22

**G**

Gardner [1]   34/23
Garner [2]   37/17 40/21
general [9]   5/22 6/3
 24/24 31/10 32/19 49/15
 51/8 52/5 53/13
General's [1]   31/1
genuine [1]   44/22
get [16]   3/13 12/8 12/20
 12/20 13/5 16/8 22/14
 23/20 26/13 34/11 35/9
 45/12 48/2 54/16 55/16
 56/8
Gilligan [1]   14/22
give [3]   18/5 19/5 28/19
given [1]   25/6
go [25]   3/13 5/18 6/14
 8/24 11/8 12/2 12/2 12/6
 15/14 16/14 18/9 22/19
 22/22 26/18 29/15 29/15
 30/23 34/1 43/6 45/16
 49/14 53/14 55/1 55/14
 55/18
goal [1]   47/12
gobble [1]   16/13
goes [4]   21/10 25/24
 33/22 53/3
going [17]   3/22 6/7 9/18
 18/16 18/16 19/13 19/22
 19/23 22/18 23/19 24/3
 26/17 30/2 41/8 41/9
 45/12 51/20

Goed [3]   5/1 30/4 43/7
 43/25 53/6 57/13
got [9]   12/10 43/18 55/8
Government [29]   3/11 3/15
 3/17 3/20 6/2 9/22 15/19
 25/5 25/9 30/14 30/15
 30/20 34/5 34/15 34/21
 37/16 37/17 38/14 42/16
 44/21 45/3 45/8 48/16
 51/5 51/12 52/3 52/4
 52/10 52/13
government's [7]   3/13
 31/4 43/10 51/20 51/22
 52/18 55/25
grandsons [1]   31/23
grappling [2]   29/9 29/11
great [2]   6/23 45/19
greater [1]   52/10
groups [3]   39/17 44/11
 44/11
grown [1]   10/15
grunt [2]   5/12 5/15
Guantanamo [1]   47/9
guess [4]   11/9 20/6 49/11
 55/23
guide [1]   35/4
guilt [1]   23/15

**H**

habeas [2]   19/11 38/20
had [12]   5/5 15/9 15/11
 22/10 33/18 40/1 40/7
 41/1 45/9 51/16 55/24
 56/9
hadn't [1]   51/5
Hamdi [5]   33/3 33/3 33/7
 33/7 42/12
hand [1]   23/14
happen [2]   25/5 52/14
happened [2]   19/24 20/23
happening [1]   14/15
happy [2]   6/20 55/22
hard [1]   47/23
has [45]   5/3 6/6 6/12
 6/20 7/1 7/6 9/4 9/23
 11/13 11/25 12/23 15/4
 15/14 16/2 17/10 17/12
 17/16 18/6 18/8 24/23
 25/4 25/15 26/20 27/25
 28/24 28/25 29/1 30/11
 30/17 32/3 32/5 32/7
 32/11 33/23 45/8 45/23
 45/25 48/4 48/16 49/4
 49/18 49/19 51/25 52/15
 53/13
hasn't [1]   23/6
hasten [1]   48/1
HAUCK [9]   2/2 3/6 3/17
 4/25 5/18 5/20 38/14 42/8
 52/23
have [99]
haven't [4]   16/11 16/11
 24/25 40/22
having [7]   15/25 19/7
 19/25 22/25 30/12 30/19
 46/18
he [21]   5/14 5/15 9/3
 9/14 9/15 9/24 9/24 25/24
 26/13 28/25 35/25 36/2
 36/2 36/22 37/8 40/8 40/8
 51/2 51/3 52/6 54/14
he's [5]   5/10 5/11 5/13

**H**

he's... [2]   15/10 40/8
head [1]   33/24
heading [1]   16/19
headquarters [2]   44/14
  44/15
hear [2]   14/19 32/12
heard [4]   26/24 26/25
  27/5 30/18
hearing [5]   1/10 6/17
  46/5 47/24 57/9
heart [1]   55/1
help [1]   56/8
helpful [1]   56/13
her [2]   39/18 43/4
here [47]   3/10 9/2 9/17
  10/8 10/12 10/14 14/16
  16/20 18/7 18/9 18/24
  19/10 22/5 26/3 28/9 29/5
  31/5 31/13 31/21 34/3
  34/24 34/25 35/1 36/4
  39/10 39/13 39/21 42/16
  43/15 44/2 44/6 44/19
  45/24 47/7 47/13 47/14
  48/10 48/16 48/17 48/22
  50/14 50/24 51/6 51/9
  51/10 53/13 55/8
hesitation [6]   6/19 15/2
  17/25 49/21 50/15 50/17
hiding [1]   9/4
high [1]   47/6
highest [7]   5/24 6/23
  14/3 22/25 38/14 38/16
  38/21
highly [1]   48/3
Hill [1]   25/24
him [4]   5/5 5/16 5/17
  35/24
himself [1]   14/1
HINA [3]   1/14 3/4 42/22
hindering [1]   17/24
his [9]   6/12 9/13 9/21
  23/4 25/17 36/5 36/6
  36/17 54/14
Hold [1]   42/20
holy [3]   3/8 3/9 3/9
homeless [1]   25/12
Honor [93]
Honor's [3]   34/2 38/9
  51/7
HONORABLE [1]   1/10
hope [3]   40/24 41/3 56/7
hostilities [6]   31/1 31/3
  32/20 33/8 36/11 38/4
hot [2]   51/4 51/5
hours [1]   47/16
house [1]   8/14
housekeeping [1]   5/2
how [22]   3/21 4/16 7/16
  7/16 11/21 15/7 16/18
  22/4 28/24 29/6 30/24
  34/14 35/8 38/23 38/23
  41/8 41/9 44/8 44/17 45/5
  54/1 54/17
However [1]   41/23
hundred [1]   29/24
hypothetical [3]   34/2
  43/15 43/24

**I**

I'd [1]   5/5
I'll [6]   6/6 8/19 11/24
  19/25 49/24 52/24
I'm [28]   6/20 9/17 10/8
  11/18 13/16 13/21 15/6
  15/11 16/10 19/25 20/8
  20/16 22/18 23/11 25/7
  26/17 27/18 27/18 28/3
  28/18 29/14 34/8 34/14
  42/22 43/24 43/24 46/6
  55/22
I've [2]   15/2 43/18
identify [2]   11/24 44/17
ignored [1]   47/5
II [3]   8/7 33/23 34/3
III [3]   8/7 11/20 39/10
illegal [2]   53/19 54/5
imagine [1]   47/23
immediately [1]   23/13
imminence [3]   38/12 40/17
  41/15
imminent [6]   9/5 10/16
  10/21 16/18 34/25 45/1
imminently [1]   14/11
immunity [12]   4/6 4/8
  4/18 4/20 21/6 24/9 43/12
  51/16 51/21 51/22 52/8
  52/11
implicated [1]   44/2
implications [2]   11/25
  48/20
implied [1]   17/16
imply [4]   18/16 18/17
  19/13 20/15
implying [1]   17/24
importance [2]   6/23 45/1
important [6]   7/1 23/17
  23/18 23/18 25/10 34/1
imposes [1]   25/3
impossible [1]   22/23
including [4]   25/13 36/12
  47/6 48/23
incredibly [1]   23/18
indeed [1]   50/11
individual [5]   11/13 22/8
  38/24 46/17 48/6
individual's [1]   13/23
individuals [10]   18/5
  19/15 19/18 21/6 21/7
  21/18 27/16 38/7 43/14
  55/10
inform [1]   11/8
Information [1]   47/9
injunction [1]   9/2
injured [2]   9/24 20/1
inquired [1]   31/2
inquiry [6]   31/22 32/15
  32/22 33/3 35/13 35/14
instance [2]   28/25 29/1
instances [1]   50/8
instant [1]   22/6
institutional [1]   11/6
integral [1]   5/4
Intelligence [1]   53/23
intend [1]   13/24
intended [7]   20/11 20/11
  22/9 22/10 22/12 35/16
  37/4
intent [1]   52/14
intention [1]   47/5
intentional [1]   20/4
interested [2]   11/22
interests [2]   32/4 32/5
interpret [2]   8/8 28/3
interpreting [1]   31/19
interprets [1]   28/4
interrogatories [1]   46/2
intrude [1]   46/16
invite [1]   5/5
invited [2]   7/1 27/25
involve [3]   11/3 50/20
  54/18
involved [5]   14/6 19/12
  32/24 33/1 42/12
involves [1]   49/24
involving [3]   7/4 17/17
  17/23
Iraq [2]   14/10 48/15
is [227]
isn't [6]   6/10 11/14
  15/24 16/1 37/4 50/23
issue [16]   6/22 11/2
  13/11 14/13 14/18 23/17
  23/18 23/24 24/15 24/16
  38/12 44/5 47/14 48/23
  51/8 55/15
issues [7]   6/8 7/6 12/25
  18/15 24/4 24/19 49/11
it [120]
it's [43]   3/13 5/20 10/4
  10/5 10/23 11/5 11/5
  11/15 13/2 13/24 14/11
  14/14 14/15 14/23 16/1
  17/2 17/8 17/13 17/15
  18/1 20/1 20/3 22/23 24/1
  25/11 26/24 27/8 27/15
  28/25 30/10 33/4 34/1
  34/16 35/12 36/5 36/8
  39/3 43/19 43/21 43/22
  48/3 53/20 55/10
its [3]   30/11 31/7 42/14
itself [1]   49/2

**J**

JAFFER [1]   1/15
JAMEEL [1]   1/15
jobs [3]   27/14 53/4 53/7
join [1]   12/7
joined [2]   12/19 33/17
Joint [1]   6/4
JSOC [1]   53/22
JUDGE [7]   1/11 9/2 9/11
  14/1 34/12 42/2 55/20
Judges [3]   15/15 15/19
  25/13
judgment [3]   49/20 54/17
  54/22
judgments [3]   7/5 11/8
  55/18
judicial [3]   29/23 38/13
  38/17
judiciary [2]   18/13 46/13
judiciary's [2]   7/12 33/2
July [1]   1/6
jurisdiction [1]   33/24
just [45]   3/7 3/16 3/24
  3/24 7/15 10/17 11/9
  14/15 16/6 16/13 16/14
  16/15 16/21 19/7 19/9
  19/11 20/22 23/3 27/11
  27/14 27/17 28/22 30/5
  30/10 30/23 32/18 34/1

**J**

just... [18]   34/8 34/14
 34/17 35/12 35/21 37/11
 40/10 40/22 41/6 42/2
 43/11 43/17 45/24 46/19
 53/1 53/20 54/3 55/24
Justice [6]   2/3 5/3 31/6
 40/25 41/4 41/5
justiciability [5]   6/8
 33/11 37/7 45/5 46/8

**K**

Kahn [2]   19/2 20/24
KAUFMAN [2]   1/14 3/4
KEBRIAEI [8]   1/20 3/5
 4/11 4/12 42/21 42/22
 42/25 45/2
key [2]   48/11 50/18
Khan [1]   3/3
kill [6]   12/24 25/21
 30/11 30/18 31/7 51/2
killed [16]   8/3 8/17 12/8
 12/10 12/20 12/21 13/5
 20/1 20/21 21/6 30/14
 33/17 36/16 49/6 51/3
 51/4
killing [4]   13/7 36/6
 47/15 47/18
killings [3]   30/25 44/5
 51/22
kills [1]   36/11
kind [16]   10/16 10/23
 11/3 11/16 28/11 28/24
 29/3 31/14 34/11 43/25
 53/9 54/4 54/11 54/12
 54/23 55/19
kinds [6]   11/3 18/14
 19/10 51/4 52/2 53/14
Kissinger [1]   50/7
know [22]   8/14 9/17 15/1
 15/10 19/14 20/9 20/12
 22/5 22/17 23/22 25/5
 25/23 35/6 37/25 39/5
 41/10 41/12 41/13 41/14
 42/24 43/17 46/17
knowledge [1]   15/8
known [1]   24/23
knows [3]   5/15 5/23 45/22

**L**

lack [1]   23/13
LAHOOD [2]   1/21 3/5
large [2]   44/4 44/11
last [5]   4/10 41/15 46/20
 49/16 55/13
launch [2]   7/22 7/22
launching [1]   53/23
law [21]   5/10 5/11 8/17
 12/25 13/5 13/8 15/5 22/4
 22/7 24/2 25/11 25/13
 29/17 30/19 44/18 44/21
 45/5 52/19 53/13 53/17
 55/7
laws [2]   25/9 28/4
lawsuit [2]   3/11 48/24
lawyer [2]   5/9 41/10
lay [1]   46/7
lead [1]   24/16
leader [1]   9/4
leaders [2]   5/24 40/6

least [1]   36/11
leaving [1]   8/11
left [3]   33/15 33/16
 39/23
legal [9]   29/13 29/14
 29/21 31/13 41/4 45/9
 45/9 45/10 56/12
legitimate [1]   40/15
LEON [2]   1/6 47/17
less [2]   55/10 55/16
let [5]   11/22 26/2 28/22
 42/17 43/10
let's [5]   9/24 12/1 32/1
 38/19 40/25
lethal [7]   9/6 31/5 31/22
 35/24 44/25 54/10 55/15
letter [3]   31/1 31/6 51/9
level [4]   6/23 14/3 47/6
 47/14
levels [4]   22/25 38/15
 38/16 38/21
liability [2]   7/4 49/12
liable [1]   27/16
Liberties [2]   1/15 1/18
Lieutenant [2]   5/22 6/3
life [1]   30/21
light [1]   55/11
like [16]   4/2 4/14 4/14
 4/17 5/5 7/20 10/2 10/10
 10/20 14/20 17/23 32/23
 33/3 38/12 42/7 51/17
likelihood [1]   16/19
likely [2]   43/21 52/9
limit [3]   15/12 15/12
 15/13
limitations [1]   51/20
limited [1]   46/1
limits [8]   43/9 43/9
 43/10 43/13 44/19 52/17
 52/18 52/18
line [2]   17/22 49/3
list [1]   51/2
litigating [2]   27/15 41/1
litigation [4]   11/16
 17/21 18/2 29/23
little [2]   16/5 32/6
live [1]   56/9
local [1]   39/24
locations [1]   32/7
locus [1]   26/4
long [2]   17/22 18/14
longer [1]   6/2
look [10]   7/17 16/18 22/6
 32/1 37/23 38/9 38/19
 39/5 53/20 54/11
looking [9]   26/15 33/4
 33/12 39/13 39/22 39/25
 40/14 50/21 55/17
looks [2]   10/11 38/22
lot [4]   5/13 6/13 18/21
 56/10
Lucas [2]   53/3 53/5

**M**

ma'am [1]   51/14
machine [1]   2/9
made [12]   6/23 9/15 14/3
 33/3 33/7 33/23 38/14
 38/20 46/14 52/1 52/10
 53/8
maintains [3]   33/4 33/6

42/14
make [6]   5/13 26/10 27/9
 54/17 55/13 55/19
makes [2]   19/6 49/25
making [6]   15/24 16/1
 17/21 19/25 26/3 26/11
man [3]   5/15 15/11 24/6
manage [1]   37/10
manageability [1]   36/15
managing [1]   46/2
manner [1]   21/24
many [1]   32/7
MARIA [2]   1/21 3/5
mark [1]   34/10
material [1]   19/6
matter [10]   3/8 13/16
 32/6 32/14 33/11 35/13
 37/7 49/19 51/24 57/6
mattered [1]   39/8
matters [4]   6/22 13/15
 18/21 46/15
may [25]   5/17 9/20 12/25
 22/8 22/10 23/17 23/21
 23/21 23/22 23/23 28/19
 30/5 32/15 33/2 33/10
 34/19 35/19 41/21 41/21
 43/11 46/1 46/1 49/14
 52/13 52/14
maybe [4]   19/21 20/16
 25/19 37/25
McRaven [2]   5/21 6/3
me [24]   4/9 4/10 11/22
 14/9 15/1 16/12 18/12
 21/8 22/21 24/25 26/2
 26/18 27/17 27/20 27/22
 28/19 28/22 29/10 29/12
 40/5 43/10 48/2 56/13
 57/4
mean [14]   8/11 9/11 10/4
 11/19 11/20 18/19 19/21
 20/3 26/8 27/18 37/24
 38/19 50/7 50/8
meaning [1]   30/22
means [2]   5/11 40/10
member [2]   5/4 9/4
members [1]   8/13
merely [1]   56/8
merit [1]   45/7
meritorious [1]   16/10
merits [5]   23/20 24/3
 45/13 45/15 46/5
message [1]   24/7
met [1]   31/14
methodology [1]   7/14
mic [1]   3/24
middle [1]   43/18
might [11]   6/12 11/17
 12/11 18/18 27/18 32/22
 40/2 44/13 46/9 47/11
 48/21
military [14]   5/24 11/7
 17/17 22/24 24/18 25/17
 38/15 38/15 48/25 49/1
 49/2 49/5 49/8 50/22
military's [1]   38/25
mind [1]   45/14
Minneci [1]   49/16
minors [1]   36/12
minute [1]   19/9
missile [1]   53/23
misunderstanding [2]

Case 1:12-cv-01192-RMC   Document 31   Filed 09/17/13   Page 68 of 71

**M**

misunderstanding... [2]   20/16 20/17
misunderstood [1]   3/19
Mitchell [1]   52/4
Mojahedin [1]   10/21
moment [3]   10/8 17/2   47/25
money [1]   25/7
months [1]   37/25
more [7]   10/6 18/14 33/2   39/23 39/23 43/21 55/17
morning [3]   5/1 30/4 43/7
most [6]   7/4 17/15 24/17   25/10 45/24 48/18
mostly [1]   44/11
motion [4]   1/10 3/10 3/13   45/16
move [1]   19/9
moving [2]   20/6 20/8
Mr. [12]   3/11 4/25 5/18   14/8 19/2 20/24 20/25   23/3 38/14 42/8 52/23   55/8
Mr. Al-Aulaqi [4]   3/11   14/8 20/25 55/8
Mr. Al-Aulaqi's [1]   23/3
Mr. Hauck [5]   4/25 5/18   38/14 42/8 52/23
Mr. Kahn [2]   19/2 20/24
Ms [4]   42/22 42/22 42/24   43/6
Ms. [5]   4/2 4/5 4/14   42/21 45/2
Ms. Kebriaei [2]   42/21   45/2
Ms. Shamsi [3]   4/2 4/5   4/14
much [14]   3/25 4/16 6/10   8/22 18/14 24/17 26/4   28/17 46/20 46/24 47/17   52/21 54/1 56/12
my [9]   5/3 19/21 26/19   30/7 33/13 33/14 42/9   56/7 57/3

**N**

name [2]   4/10 43/4
narrow [2]   15/23 30/24
NASSER [3]   1/3 3/2 3/12
nation [6]   9/23 25/9   25/11 34/4 44/8 44/9
national [14]   6/25 7/5   9/19 13/2 17/17 17/20   24/18 27/13 29/6 44/9   52/2 52/6 52/8 52/12
naturally [1]   24/1
necessary [1]   46/4
need [12]   6/13 8/3 9/18   15/16 15/20 18/1 20/12   25/23 28/17 36/3 36/14   52/14
needed [1]   12/1
needs [1]   6/9
neither [2]   49/13 57/7
never [3]   12/24 17/16   43/18
nevertheless [1]   49/22
new [3]   1/16 1/23 29/5
no [59]

nobody [1]   11/25
nondomestic [1]   57/13
none [7]   13/14 16/2 16/3   16/3 48/10 48/10 50/14
normal [1]   45/21
normally [1]   25/6
not [120]
note [4]   14/2 23/7 24/8   24/16
noted [1]   24/11
notes [2]   53/5 57/4
nothing [2]   49/19 50/3
notice [2]   53/18 54/4
now [12]   16/10 18/25   21/23 28/18 34/5 34/14   40/8 40/9 45/4 46/7 47/23   56/9
number [3]   21/23 48/11   48/25
NW [2]   1/18 2/7
NY [2]   1/16 1/23

**O**

objection [4]   4/3 5/5 5/6   5/7
objectively [1]   36/12
obligated [1]   25/12
obligation [1]   8/7
obvious [1]   27/18
occur [1]   7/3
occurred [4]   14/8 19/8   28/25 47/16
off [3]   16/19 24/6 34/10
official [1]   2/6
officials [14]   11/7 17/20   27/13 29/6 47/6 47/15   50/22 52/13 53/4 53/7   53/18 54/4 54/18 54/19
often [1]   28/24
oh [1]   25/25
okay [30]   3/19 3/20 4/15   4/22 5/11 5/16 6/14 10/13   11/17 13/4 13/18 14/1   15/13 16/6 16/17 21/14   22/13 22/20 25/13 27/6   29/8 32/1 34/11 34/14   35/15 39/4 40/12 43/19   46/4 55/12
old [5]   30/14 30/16 35/19   35/23 51/25
one [34]   3/16 3/20 5/1   5/3 7/3 7/7 11/19 17/1   18/10 21/10 21/10 21/21   23/6 23/9 23/19 24/8 25/6   25/7 26/3 28/25 29/24   30/14 32/22 40/5 40/24   41/3 41/7 44/19 45/10   49/15 50/9 50/17 52/25   55/24
ones [2]   48/13 51/10
ongoing [1]   39/25
only [11]   8/13 9/24 32/21   32/22 33/9 34/7 35/9 48/1   48/1 49/6 53/1
oOo [1]   56/15
operation [4]   18/4 36/9   54/12 54/23
operations [2]   6/5 11/8
operative [1]   32/8
opportunity [1]   16/20
opposed [4]   20/3 44/13

49/12 54/13
ordered [1]   47/15
organization [1]   32/3
organizations [1]   39/19
organize [1]   45/25
other [22]   9/14 10/9   12/20 15/19 21/6 21/7   21/18 23/17 23/22 24/8   29/8 39/4 41/8 46/22   48/18 48/23 48/25 50/1   50/3 54/9 55/10 55/24
others [1]   12/19
otherwise [1]   57/10
our [17]   4/3 4/15 9/18   14/22 17/25 31/12 31/12   32/17 35/3 35/22 37/3   37/6 43/9 43/13 44/5   49/13 56/2
out [19]   4/21 7/8 15/6   26/13 31/17 33/2 33/11   33/17 36/14 39/7 43/11   44/22 45/2 46/7 47/16   50/22 51/3 52/13 54/8
outcome [1]   57/10
outside [13]   7/23 14/9   30/25 31/3 32/13 32/16   32/20 32/23 33/8 34/5   36/10 44/24 54/2
over [6]   49/18 49/18   50/19 50/19 50/22 53/19
overarching [1]   41/7
overcome [1]   8/7
overseas [2]   8/16 26/4
oversight [4]   6/24 14/6   14/15 28/22
overview [1]   6/7
own [3]   9/21 30/11 32/17

**P**

P-R-O-C-E-E-D-I-N-G-S [1]   3/1
P.O [1]   2/3
page [2]   4/22 14/23
pages [1]   57/3
PANETTA [4]   1/6 5/21 6/2   47/17
paper [7]   31/7 31/11   32/19 34/24 37/17 41/1   45/2
PARDISS [2]   1/20 3/5
part [7]   38/24 41/11   43/13 44/4 44/4 45/21   55/21
particular [5]   24/12   46/18 46/21 46/25 47/2
particularly [4]   6/11   16/25 35/18 56/6
parties [1]   57/8
parts [1]   15/19
pass [1]   28/4
passed [1]   51/2
past [6]   29/8 38/22 39/25   40/9 40/14 43/18
pattern [1]   41/23
PAUL [2]   2/2 3/6
peninsula [1]   40/6
people [6]   3/14 3/17   12/20 25/12 30/14 36/11
People's [1]   10/21
percent [1]   29/24
perfect [1]   43/1

**P**

perfectly [1]   26/9
perhaps [3]   18/4 39/24
 41/7
period [1]   46/18
permits [1]   44/25
person [7]   3/16 3/20 5/9
 13/24 18/23 25/21 34/25
personal [2]   7/4 17/21
personnel [1]   49/1
persons [6]   18/24 20/9
 20/24 20/25 22/23 48/6
Petraeus [2]   5/21 6/2
phrase [2]   22/9 30/22
pick [1]   11/24
PILGRIM [2]   2/5 57/12
pin [1]   42/8
place [4]   9/20 20/19
 29/15 30/25
places [3]   15/3 32/5
 34/10
plain [1]   36/10
plaintiff [3]   9/12 19/23
 19/24
plaintiff's [4]   8/22 17/1
 31/21 53/21
plaintiffs [32]   1/4 1/14
 3/4 3/18 3/21 5/6 7/16
 8/2 9/1 9/12 10/14 11/23
 19/4 21/4 21/5 21/16 30/3
 32/16 32/24 35/11 39/9
 39/11 39/11 39/17 46/24
 48/6 48/24 48/25 50/3
 53/1 53/12 54/8
plaintiffs' [1]   49/10
plan [2]   46/1 46/7
play [2]   30/17 52/15
PMOI [3]   39/15 39/15
 40/17
point [19]   8/12 8/15 14/4
 14/17 18/25 26/10 37/6
 37/24 38/2 39/1 39/3 39/9
 40/15 45/8 46/11 46/20
 47/24 51/7 55/13
pointed [2]   39/7 45/2
points [2]   6/11 6/12
policies [2]   46/24 49/11
policy [9]   7/1 7/3 7/5
 11/2 16/22 17/18 22/24
 24/18 27/14
political [37]   4/4 4/17
 4/19 6/16 7/8 7/15 9/10
 10/8 10/11 11/25 13/11
 13/13 14/21 14/24 15/1
 17/8 19/19 29/19 30/6
 30/23 31/16 31/22 32/10
 32/24 33/1 33/6 33/21
 34/16 35/6 35/7 36/1 36/4
 37/9 38/8 40/18 55/1
 55/21
posed [1]   10/16
posing [2]   29/10 29/12
posit [1]   10/14
position [11]   11/9 29/13
 29/14 30/17 32/13 41/1
 41/6 41/17 43/10 55/25
 56/2
positions [3]   6/4 6/4
 43/10
possible [2]   24/11 41/21

post [1]   40/13
potentially [1]   54/24

power [5]   30/11 35/7
 39/10 39/13 44/8
powers [6]   7/9 17/13
 31/20 42/12 42/13 42/13
precedence [2]   25/14
 25/15
precise [3]   7/17 17/6
 31/8
preference [2]   4/16 6/6
preferred [1]   54/15
premature [1]   46/8
prepared [1]   46/7
preparing [1]   5/4
presence [1]   21/1
present [2]   30/12 47/7
presented [5]   34/25 42/15
 42/16 49/13 50/23
presents [1]   9/5
presidency [1]   47/20
President [14]   6/25 8/6
 8/13 12/23 13/1 13/4
 25/17 25/20 27/9 27/25
 28/20 28/24 47/21 54/14
President's [2]   13/2
 54/24
Presidential [1]   47/19
Presidents [1]   25/12
pretty [2]   4/15 24/2
preventing [1]   53/6
previously [1]   57/6
prime [1]   48/12
private [1]   11/16
probably [1]   39/22
problem [5]   11/21 15/25
 26/19 29/9 29/12
procedural [2]   21/15
 21/17
proceed [2]   46/3 46/12
proceedings [3]   2/9 56/14
 57/5
process [17]   8/17 12/25
 13/5 13/8 13/9 13/20 14/6
 14/22 14/23 21/16 21/17
 21/19 23/13 25/1 30/21
 33/20 42/5
produced [1]   2/9
prohibits [1]   30/20
promise [2]   15/4 27/17
pronounce [3]   4/9 42/25
 43/4
pronouncement [2]   17/15
 55/19
proper [1]   29/22
properly [1]   51/17
prophecy [2]   11/3 11/5
proposition [1]   30/10
protect [1]   29/6
protected [1]   27/10
provide [1]   47/7
provided [1]   57/4
provides [1]   44/18
public [2]   24/24 51/11
publicly [1]   31/2
purpose [1]   49/16
purposes [9]   32/11 33/21
 35/6 36/1 36/4 37/7 37/9
 38/9 47/25
put [3]   33/19 51/2 53/18
putting [2]   48/4 54/3

**Q**

Qaeda [5]   32/2 32/7 34/20
 38/24 40/6
qualified [7]   4/5 4/8
 4/18 4/20 6/20 24/9 43/12
question [72]
questions [29]   6/21 7/1
 7/10 7/17 7/19 8/1 8/18
 8/24 10/9 10/10 10/12
 10/14 11/10 16/15 17/3
 17/4 17/6 22/1 24/18
 26/16 43/12 54/9 54/17
 54/21 55/14 55/16 55/22
 56/7 56/7
quibble [1]   53/19
quick [3]   6/7 42/8 51/16
quintessential [1]   49/23
quite [3]   41/10 42/8 46/6

**R**

raise [3]   27/24 49/11
 54/8
raised [7]   6/22 7/2 46/22
 50/1 52/3 52/3 54/16
raises [2]   43/25 52/3
ranking [1]   5/24
Rasul [2]   17/23 48/13
reach [4]   24/3 54/7 54/22
 56/11
reached [1]   7/21
reaches [1]   7/20
read [3]   31/17 33/2 33/11
reading [1]   56/10
reaffirmed [1]   49/16
realistically [1]   32/2
really [13]   3/7 3/8 5/14
 9/16 10/11 27/18 27/19
 33/9 34/14 36/14 38/18
 41/24 50/3
reason [2]   17/19 39/16
 50/9
reasonable [1]   54/7
reasonableness [6]   34/24
 36/9 36/18 36/19 40/20
 55/4
reasoning [1]   8/22
reasons [6]   17/9 24/19
 29/11 48/11 50/15 52/6
recent [2]   6/25 17/15
recognize [4]   10/21 22/8
 22/25 44/22
recognized [6]   9/2 9/3
 10/20 17/4 17/16 55/20
recognizes [2]   7/8 18/12
record [1]   24/20
recorded [1]   2/9
recourse [1]   16/9
referred [1]   28/25
regardless [2]   14/10
 25/21
rejected [2]   52/3 52/4
related [1]   57/7
relevant [2]   14/6 32/21
relying [1]   40/17
remain [1]   6/4
remedial [1]   50/13
remedied [1]   50/10
remedies [2]   20/19 28/7
remedy [22]   6/19 7/4 17/9
 17/14 17/17 17/24 18/7

remedy... [15]  18/16
 18/17 18/18 19/13 20/15
 27/21 29/5 29/5 47/12
 48/6 49/21 50/4 50/7 53/1
 53/6
remember [2]  19/14 19/17
remind [1]  29/20
replace [1]  31/19
reporter [3]  2/5 2/6
 51/24
representing [1]  5/20
request [1]  5/2
require [1]  28/13
requires [3]  10/22 29/22
 50/8
resolution [1]  29/22
resolve [2]  14/13 31/15
resolving [1]  7/18
resort [1]  41/16
respect [15]  7/9 16/25
 17/1 17/13 21/15 21/18
 21/22 24/9 30/16 35/17
 44/5 45/4 46/25 47/4
 54/10
respectfully [1]  48/8
respond [1]  44/21
response [1]  30/6
rest [1]  13/14
result [6]  11/12 19/2
 20/1 33/20 49/6 52/9
retaliation [1]  53/9
retrospectively [1]  55/18
return [2]  14/14 14/17
review [5]  13/20 14/4
 39/2 39/22 50/4
reviewing [1]  38/25
reviews [2]  38/21 53/14
right [45]  3/10 4/13 4/25
 5/18 9/23 10/7 11/13
 11/15 11/20 12/11 12/13
 12/15 13/15 14/19 14/24
 15/7 17/2 21/8 21/17
 21/20 22/20 24/12 24/15
 24/16 25/23 26/1 26/20
 27/8 28/19 30/2 33/25
 34/9 36/20 36/21 37/15
 37/23 40/4 42/21 42/21
 43/2 46/19 47/23 51/14
 51/18 56/3
rights [35]  1/22 9/20
 10/10 11/18 12/9 13/11
 13/23 14/19 19/5 20/7
 22/15 23/18 26/23 27/2
 27/3 27/5 27/12 27/21
 27/22 33/25 36/5 36/17
 37/14 38/5 39/19 39/21
 41/22 41/24 42/2 42/3
 42/5 48/21 52/16 53/3
 53/7
rises [1]  45/25
risk [2]  33/19 38/18
robust [2]  6/24 14/5
role [18]  16/2 18/12
 30/17 31/18 32/11 32/14
 33/2 33/4 33/6 33/12
 33/22 35/8 38/9 38/17
 39/13 46/18 52/15 52/19
roles [1]  42/14
room [1]  16/13

ROSEMARY [1]  1/10
routinely [1]  49/7
RPR [2]  2/5 57/12
rule [5]  25/3 29/17 49/15
 51/21 52/11
ruling [1]  17/5
Rumsfeld [2]  17/15 19/12

S
said [12]  12/23 32/19
 39/9 39/20 43/1 48/4 49/4
 49/18 49/19 50/19 52/5
 54/14
same [17]  4/21 4/22 10/4
 10/24 11/10 20/12 31/11
 31/12 35/5 35/5 37/18
 37/19 38/3 38/5 38/8
 39/15 51/11
Sarah [1]  3/3
say [37]  3/8 3/9 9/24
 11/22 11/23 12/1 14/1
 16/6 19/4 19/25 22/17
 25/16 25/23 28/17 28/18
 34/11 34/14 34/17 34/23
 34/24 35/3 39/12 40/17
 40/22 40/25 41/13 41/14
 41/18 42/1 42/21 43/2
 44/21 45/12 45/12 46/7
 47/11 50/12
saying [20]  8/9 9/22
 10/13 10/17 13/17 15/14
 16/10 22/23 23/2 28/18
 29/14 36/22 38/3 38/4
 41/17 41/18 41/20 41/25
 42/2 51/9
says [5]  16/2 25/25 30/15
 32/19 44/23
scattered [1]  44/12
scheme [1]  50/14
Schneider [1]  50/6
scope [3]  16/12 32/14
 35/13
Scott [2]  34/23 37/18
second [5]  8/3 11/9 14/17
 16/25 49/11
secrecy [1]  52/9
Secretary [4]  5/20 6/1
 39/18 53/22
security [12]  7/5 17/18
 17/20 24/18 27/13 29/6
 52/2 52/6 52/9 52/12
 54/18 54/20
see [4]  15/25 16/12 22/16
 25/9
seek [1]  50/4
seeking [2]  44/20 47/13
seems [1]  48/2
seized [3]  21/23 36/22
 37/8
seizure [4]  37/1 37/5
 55/5 55/9
selected [1]  33/14
senate [1]  8/13
sends [1]  51/9
sensitive [2]  7/16 17/4
separate [1]  19/16
separation [2]  7/9 17/13
serious [4]  3/8 6/22
 10/22 55/1
seriously [1]  25/8
service [2]  6/3 11/7

set [4]  15/23 45/6 49/12
 56/8
seven [1]  36/11
Seventh [1]  1/22
SHAMSI [8]  1/14 3/5 4/2
 4/5 4/14 42/23 42/24 43/6
shared [3]  35/7 42/13
 42/13
Shifa [5]  7/21 8/22 39/6
 40/17 55/20
shift [1]  13/10
short [2]  54/9 55/15
shorthand [1]  2/9
should [11]  5/14 13/6
 17/3 17/14 20/11 23/7
 28/1 41/18 46/11 46/12
 49/21
shoulders [1]  50/22
shouldn't [4]  3/9 29/11
 48/5 51/12
show [1]  44/2
shown [1]  50/25
shows [1]  50/7
side [2]  12/5 34/11
significant [2]  38/23
 38/23
silly [1]  33/14
simply [3]  50/23 51/6
 52/19
since [4]  3/13 29/2 37/20
 45/24
sir [2]  29/25 56/3
sit [1]  55/22
site [1]  14/22
situation [12]  17/12
 28/24 33/8 34/7 34/22
 41/9 42/12 48/16 48/17
 50/21 54/19 54/20
situations [1]  48/15
skills [1]  56/13
slightly [1]  10/6
small [3]  44/10 44/11
 44/11
so [54]  3/8 3/25 4/21
 5/16 6/13 6/16 7/10 7/11
 7/11 7/14 8/12 9/8 9/21
 10/13 10/22 11/12 11/17
 12/25 14/11 14/14 18/7
 18/15 18/22 18/23 19/4
 19/9 19/19 20/2 21/5
 22/18 22/20 23/2 24/1
 24/18 25/14 29/4 33/9
 33/13 35/4 36/14 36/22
 37/20 38/8 38/11 43/10
 43/24 44/16 44/23 46/15
 50/21 52/17 54/3 54/15
 54/25
SOCOM [1]  6/4
some [9]  5/23 10/16 12/4
 16/14 16/22 18/25 42/17
 47/6 53/3
somebody [1]  25/24
somehow [1]  53/19
someone [7]  19/4 20/22
 21/1 25/18 25/19 38/23
 42/3
something [8]  40/10 42/7
 44/3 44/14 45/6 47/10
 51/13 53/19
somewhat [1]  47/22
son [1]  6/12

69

S    Case 1:12-cv-01192-RMC    46/18 46/21 53/23 54/10    targeting [4]    19/18 20/22
Document 35    Filed 09/17/13    21/7 21/19
54/13 35/6

sons [1]    31/23
soon [1]    56/11
sorry [5]    11/18 13/21
14/18 28/3 47/2
sort [3]    12/11 32/1 34/4
sounds [1]    10/1
source [1]    50/3
speak [1]    42/17
speaking [5]    3/14 3/16
3/18 3/20 3/21
special [11]    6/5 6/18
8/14 10/9 14/21 19/20
20/6 23/22 49/20 50/14
50/16
specific [5]    13/6 18/23
37/4 41/9 45/1
specifically [2]    19/16
21/5
speech [3]    6/25 13/3
54/14
spend [1]    9/18
spin [1]    54/7
SPITZER [2]    1/17 3/4
spread [1]    32/7
squarely [1]    31/25
stage [2]    45/7 46/8
standard [4]    54/6 54/7
55/4 55/11
standards [12]    31/10
31/11 31/14 34/21 35/2
35/5 36/7 37/10 37/11
41/15 41/17 51/9
standing [5]    9/13 9/16
9/17 14/20 23/21
Stanley [2]    49/3 49/4
start [3]    22/19 43/11
43/17
Starting [1]    52/25
state [4]    34/4 39/18
54/19 54/20
stated [2]    47/22 57/6
statement [2]    39/4 54/25
statements [2]    9/15 19/1
states [29]    1/1 1/11 2/6
9/19 12/4 12/19 12/24
18/6 19/22 20/2 20/21
20/22 21/9 23/14 25/11
25/19 25/20 29/1 29/17
32/3 33/16 33/16 33/18
40/8 44/8 50/25 52/10
54/19 57/4
status [2]    25/22 39/1
statute [2]    10/5 28/9
statutory [2]    18/19 23/9
stenographic [1]    57/4
sticking [1]    10/8
still [15]    15/10 18/3
19/5 19/13 20/15 26/12
36/5 36/17 38/17 41/13
41/13 41/16 52/15 55/18
55/19
stop [1]    8/12
store [1]    54/3
strangely [1]    54/2
Street [1]    1/16
stretch [1]    48/3
strike [18]    7/22 8/3 8/25
14/9 14/9 16/25 17/2 17/2
17/3 19/8 40/1 40/11

strikes [7]    8/4 19/17
19/17 21/7 31/3 46/25
47/2
strong [1]    25/3
structure [2]    25/3 25/4
student [2]    5/10 5/11
studying [1]    56/10
subject [3]    21/18 31/5
38/13
submit [1]    49/23
successful [1]    40/11
such [5]    9/5 27/3 35/20
44/16 48/22
suffer [1]    33/19
sufficiently [1]    53/17
suggest [1]    48/5
suing [1]    53/21
suit [1]    50/10
Suite [1]    1/19
summary [1]    42/8
supervisory [1]    49/12
suppose [1]    54/12
suppositions [1]    21/24
Supreme [9]    11/1 17/16
18/11 22/9 33/22 48/5
49/15 49/18 52/4
sure [5]    4/1 5/16 15/11
19/11 27/9
surprised [1]    15/18
surveillance [2]    51/3
52/7
suspension [1]    18/13
Swiss [3]    12/4 12/5 33/15
Switzerland [8]    12/1 12/2
12/4 12/7 33/13 33/14
33/16 43/15
system [1]    13/17

T

table [1]    5/6
tag [1]    5/17
take [7]    4/5 4/7 11/21
25/8 30/7 46/20 47/10
taken [9]    12/18 24/6
33/18 47/20 47/21 51/1
52/11 57/5 57/9
taking [1]    43/24
talk [6]    8/3 18/25 21/13
22/1 52/17 56/9
talked [2]    9/14 53/14
talking [29]    7/25 8/2
15/5 15/22 17/11 17/11
17/24 22/15 23/8 23/11
24/21 25/10 26/8 26/25
27/11 27/12 28/9 29/8
34/3 34/4 34/6 34/7 35/4
38/2 38/5 38/8 40/19
43/11 44/3
talks [4]    11/1 18/1 24/14
26/14
target [14]    7/23 14/7
15/8 21/1 22/9 22/10
22/12 35/23 35/25 36/2
36/3 36/3 36/15 37/5
targeted [18]    9/19 9/21
9/24 11/12 13/7 19/3 19/4
19/8 19/16 20/2 20/9
20/21 21/2 21/5 21/6 21/9
22/11 29/1

targets [1]    36/10
teenager [1]    30/18
telling [3]    27/22 46/3
51/12
tells [1]    51/11
term [1]    18/14
terms [4]    4/16 19/15 53/6
54/3
terrible [1]    12/6
terrorist [1]    39/19
test [7]    34/24 34/25 35/1
36/9 36/17 37/22 40/20
testify [1]    18/5
tests [1]    38/8
text [1]    13/3
textual [2]    32/22 39/10
textually [1]    7/10
than [2]    8/23 39/4
thank [17]    4/23 4/24 5/8
5/19 29/25 30/1 42/19
42/20 43/7 51/14 51/15
52/21 52/22 56/3 56/4
56/5 56/12
that [406]
that's [36]    4/13 4/15
5/15 6/1 8/10 10/16 10/19
11/24 15/13 15/25 18/8
20/12 22/9 22/20 24/4
25/7 25/10 26/10 27/22
28/9 28/17 29/13 29/14
31/14 34/11 34/12 35/9
36/21 40/15 41/17 41/24
42/12 44/13 47/24 48/16
53/8
their [27]    7/11 7/16
10/17 12/9 17/21 19/5
20/10 21/1 21/16 27/14
31/20 31/23 33/17 34/23
35/3 37/17 41/1 41/17
42/10 44/14 47/7 47/15
52/13 53/4 53/7 54/19
54/20
them [13]    8/11 8/19 9/15
11/18 18/6 20/11 22/19
24/22 27/24 28/17 48/10
48/10 48/12
themselves [1]    33/19
then [21]    3/19 4/25 5/11
7/18 12/7 14/5 14/8 23/2
30/7 45/16 47/16 51/11
theoretical [1]    14/15
theory [1]    26/5
there [69]
there's [19]    6/13 8/18
13/19 14/5 15/14 19/1
20/19 22/12 22/19 24/6
25/2 27/24 29/15 31/4
31/10 32/6 39/21 45/4
53/13
therefore [5]    8/6 8/16
31/4 33/19 55/9
these [31]    5/23 8/14 9/14
11/3 14/12 16/1 17/3 17/8
17/13 17/19 17/21 18/3
18/10 19/5 22/15 24/4
24/22 27/16 30/25 31/2
31/8 32/12 38/7 38/10
46/13 48/6 53/14 53/18
54/4 54/16 54/21

**T**

they [85]
they're [14]   12/3 14/20
  17/21 22/18 27/10 30/10
  38/3 38/4 38/6 41/17
  41/18 41/25 42/2 56/13
They've [2]   12/18 12/19
thicket [1]   26/18
thing [8]   4/21 18/10 24/8
  25/10 26/3 29/3 51/11
  55/1
things [5]   8/14 9/14
  17/23 38/12 53/11
think [39]   4/19 6/10 6/11
  6/13 8/18 10/1 11/25 12/6
  12/10 12/17 12/23 12/25
  13/2 14/2 15/17 15/19
  19/6 19/16 20/2 20/14
  20/18 23/5 25/2 26/15
  27/18 32/6 33/22 34/1
  38/11 39/15 39/22 43/16
  44/20 46/4 47/22 48/8
  53/20 55/6 55/10
thinking [1]   56/10
thinks [1]   13/4
third [1]   25/6
this [84]
those [33]   7/19 8/4 11/10
  16/23 17/6 19/16 19/17
  20/13 20/15 20/25 21/7
  21/18 22/1 22/8 22/11
  24/19 27/21 35/2 37/19
  38/20 38/21 39/10 41/23
  42/3 44/2 47/16 48/12
  49/2 49/10 49/13 54/12
  55/16 55/18
though [6]   13/3 34/1 36/2
  37/7 49/14 53/21
thought [1]   47/1
threat [13]   9/5 10/16
  10/22 16/19 17/20 25/18
  25/19 34/25 38/25 39/25
  40/2 44/22 45/1
threats [1]   44/22
three [5]   25/4 38/7 46/25
  47/2 51/3
through [16]   7/4 8/24
  11/6 11/7 11/7 11/16
  15/15 16/14 18/13 21/10
  21/12 21/23 42/4 44/10
  53/15 55/18
throughout [1]   43/8
tie [1]   17/5
tied [3]   16/1 16/1 26/4
time [14]   4/15 4/17 9/18
  14/20 31/15 42/18 46/16
  46/23 47/4 47/7 47/10
  51/1 53/10 57/5
today [1]   9/18
today's [1]   47/24
together [1]   27/9
told [1]   24/25
too [4]   20/23 47/17 47/22
  47/23
took [1]   30/25
tools [1]   45/9
top [2]   6/14 47/14
tort [4]   9/25 10/2 23/24
  39/11
towards [1]   6/19

traditional [1]   44/19
tragic [1]   35/19
transcript [3]   1/10 2/9
  57/3
transcription [2]   2/10
travel [1]   16/7
trepidation [1]   45/19
trouble [2]   36/24 36/25
troubled [2]   27/18 27/19
troubling [1]   28/22
true [4]   50/6 51/11 51/12
  57/2
try [4]   8/19 52/24 56/8
  56/11
trying [8]   15/6 34/8
  34/10 34/14 42/25 43/4
  43/17 44/1
turn [4]   5/16 7/15 29/16
  30/6
turning [2]   8/25 31/16
two [13]   3/14 3/17 4/20
  19/10 20/9 20/13 20/24
  36/12 39/25 47/1 47/2
  53/22 55/10

**U**

U.S [27]   2/3 8/1 8/2 8/3
  9/1 9/21 9/22 12/24 13/7
  18/24 19/5 19/12 19/23
  20/20 22/24 23/3 23/11
  25/22 26/19 29/1 29/16
  32/4 32/5 39/14 47/18
  48/22 49/25
ultimately [4]   9/13 9/14
  23/19 30/24
unclear [2]   15/3 38/1
unconstitutional [2]
  21/19 49/17
under [10]   10/2 23/24
  28/8 31/20 36/8 37/12
  44/23 48/3 48/7 49/3
underscore [1]   30/24
understand [21]   3/14 6/15
  14/4 15/2 15/3 15/5 15/9
  15/21 19/6 22/22 25/15
  26/6 26/7 26/10 29/13
  29/18 36/25 41/11 42/6
  51/7 56/7
understanding [2]   15/15
  15/19
understood [1]   42/5
unending [1]   45/10
unfortunate [1]   20/10
unilaterally [1]   25/21
unintended [4]   35/16
  35/18 35/19 35/20
Union [2]   1/15 1/18
UNITED [28]   1/1 1/11 2/6
  9/19 12/4 12/18 12/24
  18/6 19/22 20/1 20/21
  20/21 21/9 23/14 25/11
  25/19 25/20 29/1 29/17
  32/3 33/16 33/16 33/18
  40/7 44/8 50/24 54/19
  57/4
University [2]   6/25 13/3
unlawful [1]   52/6
unless [3]   4/15 6/6 6/9
unmanageable [1]   39/23
unreasonable [4]   35/24
  36/12 36/13 37/9

unsuccessful [1]   40/2
unusual [3]   24/1 24/15
  48/3
up [13]   10/2 11/6 12/18
  13/25 16/13 19/25 22/7
  25/24 27/5 33/18 39/6
  42/18 44/1
us [4]   13/10 16/8 25/9
  45/3
use [6]   31/5 31/11 31/22
  35/23 44/25 54/1
used [2]   37/3 37/5
uses [2]   31/11 38/14

**V**

variety [1]   50/19
various [1]   32/5
vary [2]   20/20 21/11
versus [3]   3/3 4/17 39/10
very [27]   6/14 12/3 15/22
  18/5 19/19 20/3 20/18
  24/1 24/14 24/14 24/17
  25/3 26/2 26/4 28/22
  37/14 41/8 42/4 42/6
  46/13 46/20 46/24 52/21
  52/24 54/25 56/12 56/13
victim [5]   35/16 35/16
  35/18 35/19 35/20
view [2]   36/10 49/1
views [1]   47/7
vindicated [2]   41/24
  48/21
violated [4]   21/17 31/24
  42/4 52/16
violation [2]   27/12 53/6
virtually [2]   48/12 52/18
Votel [2]   5/22 6/3

**W**

wait [2]   19/21 26/17
walk [2]   21/12 21/23
want [10]   3/7 16/7 17/19
  18/25 20/9 26/18 42/1
  43/20 53/2 53/4
wanted [2]   30/5 30/24
war [11]   11/23 12/1 12/2
  12/2 12/3 31/20 32/4
  33/23 34/3 42/7 42/12
warrants [1]   9/5
was [65]
Washington [4]   1/5 1/19
  2/4 2/7
wasn't [3]   8/25 36/2 36/3
water [1]   6/14
Waterman [1]   11/1
way [7]   10/24 11/10 13/25
  16/4 18/8 22/16 22/17
ways [2]   45/11 46/2
we [89]
we'll [1]   23/12
we're [38]   3/10 4/22 7/25
  12/1 12/3 12/19 17/11
  17/11 20/6 25/10 26/3
  26/3 26/5 26/22 27/11
  27/12 28/9 29/8 33/7 33/8
  34/3 34/4 34/6 34/7 34/11
  34/12 35/4 35/10 37/25
  38/7 39/25 40/18 41/8
  41/9 42/7 44/3 51/19 54/3
we've [1]   55/11
weeks [1]   51/3

Case 1:12-cv-01192-RMC   Document 37-3   Filed 03/17/13   Page 71 of 71

**W**

weighty [1]   10/6
well [28]    3/7 4/19 6/9
 10/4 12/9 12/17 13/4
 13/13 14/1 15/14 19/4
 19/21 20/10 22/18 23/8
 24/2 24/22 24/23 26/13
 32/25 36/19 37/13 40/1
 40/15 41/3 42/15 42/16
 47/19
went [3]   33/16 33/17 42/4
were [55]   5/25 8/2 9/1
 11/23 16/22 17/7 19/17
 19/18 20/9 20/10 21/2
 21/4 21/5 21/6 21/6 21/7
 21/9 21/18 21/23 22/11
 22/15 23/6 31/3 31/14
 33/17 36/16 38/1 39/11
 39/11 39/17 39/18 39/22
 40/8 42/4 42/6 42/6 42/12
 44/16 46/17 48/2 48/14
 48/19 48/24 48/24 48/25
 49/2 49/2 49/3 52/3 53/18
 54/6 54/9 54/22 55/7 56/8
WERNER [2]   2/2 3/6
what [47]   4/7 8/6 8/9
 8/12 8/15 10/11 10/13
 11/22 15/6 16/12 16/19
 16/20 16/22 16/24 17/2
 20/5 20/12 20/12 25/1
 25/10 27/22 28/9 28/17
 29/16 29/22 31/10 34/3
 35/15 37/22 37/22 37/23
 38/1 38/13 41/20 41/24
 44/3 45/14 46/4 46/7 46/9
 46/17 46/17 47/5 49/14
 53/16 54/4 54/11
what's [2]   24/25 37/20
whatever [1]   28/21
when [30]   5/16 7/5 7/20
 9/21 11/2 13/23 14/20
 16/20 17/21 17/25 20/21
 21/1 25/24 28/6 29/6 33/4
 37/3 37/5 37/25 38/1
 40/18 41/14 44/25 45/12
 48/2 51/8 52/17 52/17
 54/1 55/3
where [36]   7/21 8/12 9/3
 11/19 13/9 13/18 15/6
 15/12 17/3 17/12 17/16
 18/11 18/12 18/13 18/20
 18/22 19/8 22/4 22/7
 24/25 25/23 27/2 27/6
 27/20 29/15 29/21 42/13
 44/13 44/14 44/17 45/4
 45/24 46/23 50/9 52/9
 52/12
wherever [3]   16/7 16/8
 44/12
whether [48]   8/25 9/1 9/3
 10/15 10/22 11/14 11/15
 12/14 19/19 20/19 20/20
 21/22 21/25 22/15 22/19
 24/13 25/21 26/23 26/23
 26/25 27/16 28/1 31/13
 31/22 32/11 32/12 32/13
 32/15 32/21 34/25 35/1
 35/7 35/22 36/6 37/8 37/8
 38/22 38/23 42/3 46/15
 49/20 51/24 52/15 53/2

which [23]   17/3 17/18
 17/23 18/20 21/24 23/17
 23/19 25/5 29/1 31/1
 31/21 32/16 33/22 42/7
 43/25 45/23 46/20 49/25
 50/16 51/21 53/16 57/8
while [2]   20/10 56/8
white [7]   31/7 31/11
 32/19 34/24 37/17 41/1
 45/2
who [28]   3/20 5/3 6/12
 8/2 8/14 9/4 10/14 18/20
 18/21 19/15 19/24 19/24
 20/9 22/8 22/24 24/6
 24/23 25/19 29/15 30/2
 33/5 36/14 43/14 48/24
 48/24 49/1 52/5 54/2
who's [1]   5/9
whole [1]   6/13
whom [3]   12/19 30/15
 51/25
whose [1]   49/5
why [7]   6/17 6/17 19/9
 29/11 30/19 42/17 47/16
will [9]   3/14 4/2 11/25
 14/1 29/5 30/7 51/22 56/9
 56/11
willfully [2]   37/4 37/5
window [1]   16/20
within [3]   7/11 24/2
 32/12
without [13]   8/16 12/24
 13/5 13/7 15/8 17/25
 23/14 28/21 30/12 30/19
 30/21 50/2 52/18
won't [1]   24/6
wonder [1]   51/17
words [1]   42/9
work [6]   5/12 5/13 5/15
 24/23 27/9 43/18
works [1]   3/25
world [7]   25/18 25/19
 32/4 32/5 33/23 34/3
 44/12
worlds [1]   54/3
would [82]
wouldn't [1]   36/3
wrong [4]   15/4 19/22
 30/10 30/16
wrongdoing [1]   51/25
wrongs [2]   33/20 50/9

**Y**

Yeah [1]   12/16
year [6]   30/14 30/16
 35/19 35/23 49/16 51/25
years [2]   39/25 51/2
yelled [1]   25/6
Yemen [2]   32/8 56/1
Yemeni [1]   54/18
yes [6]   5/18 24/10 27/20
 28/8 36/23 43/3
yet [1]   5/4
York [2]   1/16 1/23
you [167]
you're [25]   5/16 8/2 8/6
 8/9 8/11 10/13 10/17 15/5
 15/13 15/25 16/7 16/8
 22/23 23/8 26/8 26/11
 27/22 29/9 29/11 29/12

 53/19 54/9 54/22 55/24
 57/3 57/9 57/11
 33/4 36/22 41/10 42/2
 42/24
young [1]   15/11
younger [2]   19/2 20/24
your [134]

**Z**

zealous [1]   52/13