## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASSER AL-AULAQI, as personal representative of the estate of ANWAR AL-AULAQI, et al., | |
| Plaintiffs, | No. 1:12-cv-01192 (RMC) |
| v. | |
| LEON E. PANETTA, et al., in their individual capacities, | |
| Defendants. | |

## UNITED STATES' MOTION FOR RECONSIDERATION AND TO STAY THE COURT'S DECEMBER 26, 2013, ORDER

Under Federal Rules of Civil Procedure 6(b) and 54(b), the United States, which has filed a Statement of Interest but is not a party to this litigation, respectfully moves this Court to reconsider and vacate its December 26, 2013, Order requiring the United States to lodge with the Court one or more classified declarations providing "information implicated by the allegations in this case and why its disclosure could reasonably be expected to harm national security." Dec. 26, 2013, Minute Order. The United States also respectfully moves this Court to stay its Order pending resolution of the United States' present motion and, in the event this motion is denied, to extend the date for compliance with the Order to thirty days from this Court's decision on reconsideration. Under Local Civil Rule 7(m), counsel for the United States conferred with Plaintiffs' counsel, who have stated that Plaintiffs intend to file a response to this motion. The grounds for this motion are included in the accompanying memorandum of supporting points and authorities. Proposed orders are attached.

Dated: January 10, 2014                    Respectfully submitted,

                                           STUART F. DELERY
                                           Assistant Attorney General
                                           Civil Division

                                           BRIAN HAUCK
                                           Deputy Assistant Attorney General

                                           RUPA BHATTACHARYYA
                                           Director, Torts Branch

                                           MARY HAMPTON MASON
                                           Senior Trial Counsel
                                           D.C. Bar No. 427461


                                           ___/s/_Paul E. Werner_____
                                           PAUL E. WERNER
                                           (MD Bar, under LCvR 83.2(e))
                                           Trial Attorney
                                           United States Department of Justice
                                           Torts Branch, Civil Division
                                           P.O. Box 7146, Ben Franklin Station
                                           Washington, D.C.  20044
                                           (202) 616-4152 (phone)
                                           (202) 616-4314 (fax)
                                           E-mail: Paul.Werner@usdoj.gov

                                           Attorneys for the United States[1]

---

[1] Although the above attorneys also represent the Defendants, this motion for reconsideration is filed solely on behalf of the United States.

## MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES

## INTRODUCTION

The Court has ordered the United States, which has filed a Statement of Interest but is not a party to this litigation, to provide certain classified factual information implicated by Plaintiffs' complaint. That Order comes at a point in the litigation where the sole named Defendants, former Secretary of Defense Leon Panetta, former Director of the Central Intelligence Agency David Petraeus, Admiral William McRaven, and Lieutenant General Joseph Votel—all current and former military or intelligence officials sued in their personal capacities—have filed a dispositive motion to dismiss Plaintiffs' complaint on purely legal grounds, including because special factors preclude the implication of a remedy and because the officials are entitled to qualified immunity. Defendants' motion, which accepts all of Plaintiffs' factual allegations as true, is fully briefed and argued, and is ripe for decision.

While the underlying factual issues addressed in the Court's Order may become relevant at some point in the litigation, inquiry into those issues is inappropriate in advance of a ruling on the Defendants' motion. Although the United States recognizes the weight of the legal issues presented by Defendants' motion, as well as the significance of the matters alleged in Plaintiffs' complaint, ample authority indicates that the threshold defenses raised in Defendants' motion should be resolved at the earliest possible stage in the litigation, without discovery or factual inquiry. That principle applies with particular force here, where the requested information is classified. In these circumstances, this Court should reconsider and vacate its Order to the United States, and should reserve any inquiry into the facts underlying Plaintiffs' complaint, if necessary at all, until after the resolution of Defendants' pending motion and appropriate appeals where warranted. It should also stay its Order while it considers the present motion. Finally, if the Court

denies the present motion, it should extend the date for compliance with its Order to permit the
Defendants to consider pursuing an appeal of a *de facto* denial of their motion to dismiss.

## PROCEDURAL HISTORY

On July 18, 2012, Plaintiffs Nasser Al-Aulaqi and Sarah Khan filed a complaint
purportedly on behalf of the estates of Anwar Al-Aulaqi, Abdulrahman Al-Aulaqi, and Samir
Khan ("decedents") against the then-Secretary of Defense, the then-Director of the Central
Intelligence Agency, and two high-ranking military officials ("Defendants") in their personal
capacities seeking money damages and alleging that these officials "authorized and directed" two
separate "missile strikes" in Yemen that killed decedents. Compl. ¶¶ 10-15, 31, 37. Plaintiffs
brought claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*¸ 403
U.S. 388 (1971), against these officials alleging violations of the Fourth and Fifth Amendments
and the Bill of Attainder Clause. Compl. at 15-16.

On December 14, 2012, Defendants moved this Court to dismiss the complaint for lack of
subject matter jurisdiction and for failure to state a claim upon which relief could be granted. *See*
Doc. 18, Defs.' Mot. to Dismiss, at 4. Defendants explained that Plaintiffs' claims raised
nonjusticiable political questions, that under binding D.C. Circuit precedent, special factors
barred an implied right of action against Defendants personally, and that Defendants were
entitled to qualified immunity because Plaintiffs had failed to allege the violation of any clearly
established constitutional right. *Id.* For purposes of their motion, Defendants accepted all of
Plaintiffs' well-pled factual allegations as true. *Id.* at 3 n.2. Concurrently, the United States,
which is not a party to this litigation, filed a Statement of Interest notifying the Court of its
earlier invocation of the military and state secrets privilege in related litigation, *Al-Aulaqi v.
Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010), and noting, consistent with the Attorney General's

stated policy, that the United States was not invoking the privilege in this litigation at the present time but reserved its right to do so in the event the litigation proceeded beyond Defendants' motion to dismiss. *See* Doc. 19, U.S. Statement of Interest.[2] Oral argument was held on Defendants' motion on July 19, 2013.

On December 26, 2013, the Court ordered the United States to lodge with this Court, *ex parte* and *in camera*, and by January 24, 2014, classified declarations providing "information implicated by the allegations in this case and why its disclosure reasonably could be expected to harm national security." Dec. 26, 2013, Minute Order. The Court added that the declarations should include "information needed to address whether or not, or under what circumstances, the United States may target a particular foreign terrorist organization and its specific leadership," as well as "the specific threat posed by . . . Anwar Al-Aulaqi." *Id.* The Court also requested information on "other matters that plaintiffs have put at issue, including the criteria governing the use of lethal force, updated to address the facts of this record." *Id.* (citing *Al-Aulaqi v. Obama*, No. 10-cv-1469 (D.D.C.) (JDB)).[3]

## ARGUMENT

The United States respectfully urges this Court to vacate its December 26 Order so as to correct a clear error, and to stay that Order while it considers the United States' present motion.

---

[2] As of the date of this filing, the United States has not invoked the state secrets privilege in this litigation, nor has it made a determination on whether it will do so at some future stage of the proceedings.

[3] The United States recognizes that Judge Bates ordered it to lodge classified declarations in *Al-Aulaqi v. Obama* in considering its motion to dismiss. Notably, the court did not rely on those declarations in reaching a decision on the United States' motion. *See Al-Aulaqi*, 727 F. Supp. 2d at 54. Moreover, this case is different from *Al-Aulaqi v. Obama* in two significant respects. First, unlike in *Al-Aulaqi v. Obama*, the United States, its agencies, and its officers in their official capacities are not defendants; individuals sued in their personal capacity are. Second, those individuals have raised the threshold legal defenses of qualified immunity and special factors, defenses that were unavailable in *Al-Aulaqi v. Obama*.

First, jurisdiction to order the United States, a non-party to the litigation, to produce the requested information is absent. Second, the requested information is irrelevant to the resolution of the Defendants' pending motion to dismiss. And third, the threshold defenses raised in Defendants' pending motion, including qualified immunity and special factors, are defenses for which Defendants—current and former government officials sued in their personal capacities only for money damages—are entitled to a ruling before any court-ordered development of the factual record.  For these reasons, the Court should vacate its Order. It should also stay that Order while it considers the present motion. Finally, if the Court declines to reconsider its Order, it should extend the date for compliance with the Order to permit Defendants to consider an appeal of the Court's *de facto* denial of their threshold defenses.

## I.      The Standard of Review.

This motion seeks relief under Federal Rule of Civil Procedure 54(b), which is available "as justice requires." *Prince George's Hosp. Ctr. v. Advantage Healthplan Inc.*, -- F. Supp. 2d --, No. 03-cv-2392, 2013 WL 5705697, at *3-4 (D.D.C. Oct. 21, 2013). Generally, a court will grant a motion for reconsideration when the movant demonstrates "a clear error" in the order. *Id.* (quoting *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 (D.D.C. 2008)). Here, the Court's December 26, 2013, Order was in "clear error."

In addition, under Federal Rule of Civil Procedure 6(b), courts may extend the time in which an act must be done "for good cause." The arguments set forth in this motion provide "good cause" for staying this Court's Order seeking classified information from the United States until after the Court rules on the issues presented herein and after any appropriate appellate review is undertaken.

**II.     It Is Error To Order the United States To Lodge Classified Declarations in this Matter Because Jurisdiction over the United States Is Absent.**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Beethoven.com LLC v. Librarian of Congress*, 394 F.3d 939, 945 (D.C. Cir. 2005). To act, they must have jurisdiction. *See NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008). In most instances, federal courts do not have jurisdiction over non-parties. *See Flatow v. Islamic Republic of Iran*, 305 F.3d 1249, 1252-53 (D.C. Cir. 2002) (vacating district court ruling on motion to compel against United States because United States was not a party and district court therefore lacked jurisdiction); *Doe v. Schwarzenegger*, No. 1:06-cv-1219, 2009 WL 4507710, at *1 (E.D. Cal. Dec. 3, 2009) (declining to order California Department of Corrections and Rehabilitation to turn over medical records in 42 U.S.C. § 1983 action against state officials because Department was "not a party to this litigation" and thus the court "lack[ed] jurisdiction to issue such an order").

The United States is not a party to this litigation, and therefore jurisdiction to issue an order against it is absent. Plaintiffs named four current and former government officials in their personal capacities as the sole defendants in this case. *See* Compl. ¶¶ 10-15. As the United States noted in its Statement of Interest, it "is not a party to this suit." Doc. 19, U.S. Statement of Interest, at 1.

Nor did the United States' Statement of Interest subject it to this Court's general jurisdiction. The filing of a Statement of Interest by the United States under the statutory authority of 28 U.S.C. § 517 does not, by itself, subject the United States to a court's jurisdiction. *See Flatow*, 305 F.3d at 1252-53. In *Flatow*, the United States, which the plaintiff had not named as a party, filed a Statement of Interest and asked the court to vacate attachments and quash accompanying writs plaintiff had sought against property of the Iranian government. *Id.* at 1251-

5

52. Plaintiff then moved the court to compel the United States Treasury to satisfy a certain

portion of the judgment in the case. *Id.* In holding that the district court lacked jurisdiction over

the United States, the D.C. Circuit noted that the plaintiff did not name the United States as a

defendant; nor was the United States ever added as a party through amendment of the complaint,

joinder, or intervention. *Id.* at 1252. The court found further that the United States' Statement of

Interest was limited to the attachments. *Id.* at 1252-53. Thus, the United States was not subject to

the court's jurisdiction. *Id.*

So too here. Plaintiffs did not name the United States as a party in their complaint or

through any amendments, nor did the United States join as a party through joinder or

intervention.[4] The mere filing of a Statement of Interest does not make the United States a party

to litigation. Moreover, the United States' Statement of Interest here was strictly limited to

notifying the Court of its invocation of the military and state secrets privilege in earlier related

litigation, highlighting that many of Plaintiffs' allegations involved information covered by the

earlier invocation. The United States also explained its policy regarding the invocation of the

privilege, conveyed that it was not currently invoking the privilege at this juncture in the

litigation, and reserved its right to do so in the future. *See* Doc. 19, U.S. Statement of Interest, at

3-6. Thus, the United States "took no action that subjected it to the general jurisdiction" of this

Court. *Flatow*, 305 F.3d at 1253 (citations omitted). As *Flatow* demonstrates, the simple fact that

---

[4] That Plaintiffs named current and former United States officials as Defendants in their personal
capacities does not alter the United States' status as a non-party or compel departure from
*Flatow*. Indeed, the Plaintiffs could not maintain this suit against the United States or its agencies
for the causes of action alleged—constitutional tort claims for money damages—because
sovereign immunity would bar such an action. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994)
(holding that a *Bivens* action cannot be brought against the United States government or its
agencies). *Cf.* 28 U.S.C. § 2680(k) (excepting claims arising in a foreign country from waiver of
sovereign immunity for tort claims under the Federal Tort Claims Act).

the United States alerted a court presiding over a *Bivens* case of relevant earlier litigation and reserved its right to assert a government-held privilege is not sufficient to subject it to the court's jurisdiction. Therefore, this Court should vacate its Order, and in all events should stay its Order pending resolution of the United States' present motion.

III.    **The Requested Classified Factual Information Is Irrelevant To Resolving Defendants' Pending Threshold Defenses, Which Accept Plaintiffs' Factual Allegations as True and Which Must Be Addressed Before Considering the Merits.**

    Beyond the jurisdictional issue, the Court should vacate its Order because Defendants' motion to dismiss, which raises the threshold defenses of the political question doctrine, special factors, and qualified immunity, remains pending. The information requested, besides being classified, is not germane to Defendants' pending motion, which accepts Plaintiffs' well-pled facts as true. The grounds for dismissal did not refer to or rely upon any of the classified information requested, other than to note its mere existence. Nor is any classified information necessary to resolve Defendants' motion. To the contrary, as described below, requiring such a factual exposition at this stage of the proceeding, even *ex parte* and *in camera*, is a marked departure from the framework the Supreme Court has mandated applies in individual capacity constitutional tort litigation against federal officials—and, as it is unnecessary to resolve the pending motion, fails to accord with 28 C.F.R. Part 17's requirements for the disclosure of classified information.[5]

    First, the factual information requested is irrelevant to Defendants' special factors argument. As Defendants have argued, under binding D.C. Circuit precedent, special factors preclude implying a cause of action for Plaintiffs' claims given the context in which those

---

[5] Moreover, the Defendants themselves may not have access to all the requested information. Accordingly, although Defendants' counsel would have access to the requested information in this specific instance because counsel for the United States happens to be the same as that for the Defendants, the *ex parte* and *in camera* limitations apply to the Defendants as well.

claims, as pled, arise—the alleged firing of missiles by military and intelligence officers at enemies in a foreign country in the course of an armed conflict. *See* Doc. 18, Defs.' Mot. to Dismiss, at 23-28 (citing *Doe v. Rumsfeld*, 683 F.3d 390 (D.C. Cir. 2012), *Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011), and *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008)). For purposes of making this showing, Defendants did not dispute, as a factual matter, any of Plaintiffs' well-pled factual allegations. Nor is the special factors bar controlled by any particular classified information that may be in the United States' possession.[6] And most importantly, any classified information the United States may possess would not change the context of Plaintiffs' claims as pled and therefore would not alter the special factors analysis. Accordingly, such information is not necessary to decide Defendants' special factors argument.[7]

Moreover, the very question of whether to create a cause of action is itself a threshold question that must be decided before proceeding beyond the pleadings stage. *See Wilkie v. Robbins*, 551 U.S. 537, 549 (2007) (in reviewing appellate court holding that plaintiff stated a clearly established violation of the Fifth Amendment, noting that "[t]he first question is whether to devise a new *Bivens* damages action for retaliating against the exercise of ownership rights").

[6] Although Defendants explained that the "specter of disclosing classified information" was a special factor, Defs.' Mot. to Dismiss at 26, it was the existence of such information—not its specific content—that the D.C. Circuit has concluded is a special factor. As Defendants highlighted in their motion, adjudication of Plaintiffs' claims would "inevitably require an inquiry into classified information." *Id.* at 27 & n.20 (quoting *Wilson*, 535 F.3d at 710 and referring to invocation of the state secrets privilege in earlier related litigation). The D.C. Circuit in *Wilson* did not require access to any classified information at issue before concluding that its existence warranted dismissal based on special factors.

[7] Similarly, Defendants' political question showing did not refer to or rely upon classified information. *See* Doc. 18, Defs.' Mot. to Dismiss, at 5-21. As Defendants explained, *id.* at 6, it was the specific questions that the Court would be required to decide if it were to rule on Plaintiffs' claims—not the particulars of the underlying facts—that gave rise to the nonjusticiability of those claims. Any classified factual information would not change those specific questions themselves and therefore is not necessary to adjudicate Defendants' political question defense.

Requiring declarations of a non-party in order to rule on an individual defendant's motion to dismiss a case on special factors grounds would be both a significant shift in *Bivens* jurisprudence and a departure from the Federal Rules of Civil Procedure governing the resolution of motions to dismiss. Counsel is unaware of any case where a defense of special factors has been raised and addressed by a court in which the court required an evidentiary showing. The concerns such a procedure raise apply with added force here, where Plaintiffs' claims directly implicate the sensitive arenas of separation of powers, military effectiveness, foreign affairs, and classified information. Indeed, in *Doe*, the D.C. Circuit resolved plaintiffs' claims implicating many of these areas on threshold special factors grounds without addressing defendants' qualified immunity defense, and before developing the factual record. *See Doe*, 683 F.3d at 397 ("Because we have determined that Doe may not bring a *Bivens* action against Secretary Rumsfeld, we need not consider Secretary Rumsfeld's qualified immunity defense to such an action.").

Second, the requested information has no bearing on Defendants' qualified immunity argument. Defendants urged that they were entitled to qualified immunity based on Plaintiffs' factual allegations. *See* Doc. 18, Defs.' Mot. to Dismiss, at 29-44. Defendants did not refer to any classified information in support of their showing. *See id.* Rather, Defendants emphasized that the absence of constitutional case law in the context of alleged lethal military and intelligence operations against enemies abroad demonstrated that any constitutional rights claimed by decedents were not clearly established. *See id.* at 31-35, 39-41. Defendants further argued that were this Court to import domestic law enforcement precedent into this extraordinary

context, that act itself would render the law not clearly established. *Id.* at 35, 41. Again, any classified information requested would not affect that showing of the state of the case law.[8]

Finally, had the United States already asserted the military and state secrets privilege in this litigation, the requested information likely would have been relevant and necessary for this Court to review. Consistent with the United States' current policy, however, to date, the United States has not made a determination to assert the privilege in this litigation. Under that policy, the Department of Justice will defend assertion of the military and state secrets privilege "only to the extent necessary to protect against the risk of significant harm to national security," and "will seek to dismiss a litigant's claim or case on the basis of the state secrets privilege only when doing so is necessary to protect against" such a risk. *See* Doc. 19, Ex. 4, September 23, 2009 Memorandum Regarding Policies and Procedures Governing Invocation of the State Secrets Privilege, at 1. *Cf. Al-Aulaqi*, 727 F. Supp. 2d at 53 ("But defendants also correctly and forcefully observe that this Court need not, and should not, reach their claim of state secrets privilege because the case can be resolved on the other grounds they have presented."). Since the policy's inception in 2009, the United States has thus far found it unnecessary to invoke the privilege in a case asserting only *Bivens* claims while dispositive, threshold motions to dismiss are pending on behalf of the individual defendants, as in this case.[9] That threshold motion here

---

[8] Likewise, Defendants' argument that decedents' constitutional rights were not violated assumed the truth of Plaintiffs' factual allegations, and supplemented those allegations only with judicially noticeable public information, the content of which Plaintiffs did not and do not dispute. As with Defendants' other threshold defenses, Defendants did not refer to classified information in support of their showing that decedents' constitutional rights were not violated. And such information is not required to evaluate Defendants' showing.

[9] Before the current policy was adopted, the United States had, on rare occasions, asserted the state secrets privilege in *Bivens* suits against individual federal officials, either before those individuals filed a dispositive motion, *see El-Masri v. Tenet*, 437 F. Supp. 2d 530, 535 (E.D. Va. 2006), *aff'd*, 479 F.3d 296 (4th Cir. 2007), or while those officials' threshold motions to dismiss

can and should be resolved, without reference to the classified information that would be at stake

in a state secrets assertion, by a decision through the traditional litigation process, on a record

which the public, the Plaintiffs, and the Defendants themselves can view.[10]

IV.     **Because Requiring Further Proceedings Before Resolving Defendants' Qualified Immunity and Other Threshold Defenses Would Amount To a *De Facto* Denial of Those Defenses, the Court Should Definitively Rule on Their Defenses or, in the Alternative, Delay the Operation of Its Order Pending a Consideration of Appeal.**

Requiring additional proceedings in this matter without resolving the threshold defenses

presented by Defendants in this case would permit the litigation against those individuals to

remain pending. A request for factual information to address their defenses would be

immediately appealable, particularly where those individuals are the only defendants in this

litigation. As the Supreme Court has noted in the context of qualified immunity, that doctrine is

"an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsythe*, 472 U.S.

511, 526 (1985). Qualified immunity is "effectively lost if a case is erroneously permitted to go

to trial." *Id.* Accordingly, the Supreme Court has "repeatedly . . . stressed the importance of

resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502

U.S. 224, 227 (1991). *See also Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir.

2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds*, *Pearson v.

Callahan*, 555 U.S. 223 (2009)); *Kalka v. Hawk*, 215 F.3d 90, 94 (D.C. Cir. 2000) ("The

Supreme Court has . . . instructed lower courts that the validity of a qualified immunity defense

should be determined as early as possible, preferably before discovery and trial."). It is the

---

were pending. *See Arar v. Ashcroft*, 414 F. Supp. 2d 250, 257, 287 (E.D.N.Y. 2006), *aff'd*, 532 F.3d 157 (2d Cir. 2008), *vacated and rev'd*, 585 F.3d 559 (2d. Cir. 2009) (en banc).

[10] Additionally, for classified information that is subject to special protections, *see* Executive Order 13,526, 75 Fed. Reg. 707 § 6.1(dd) (Dec. 29, 2009); 28 C.F.R. Part 17, the fact that the requested information is not necessary or relevant for purposes of deciding the pending motion to dismiss only underscores why the Court's Order should be vacated.

importance of the right of qualified immunity that allows for an immediate interlocutory appeal of its denial. *See Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); *see also Will v. Hallock*, 546 U.S. 345, 353 (2006) (noting that because qualified immunity protects the "public interest" in enabling government officials to show initiative where the law is not clearly established, "a quick resolution of a qualified immunity claim is essential").

Where a defendant raises a qualified immunity defense on the "purely legal" questions of whether a plaintiff has asserted a violation of a constitutional right and whether that right was clearly established, the defendant "is entitled to have his motion" decided "promptly as a matter of law." *X-Men Security, Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999). As the Second Circuit in *X-Men* explained, if a district court refuses to grant a qualified immunity motion "on the premise that the court is unable to, or prefers not to, determine the motion without discovery into the alleged facts, that refusal constitutes at least an implicit decision that the complaint alleges a constitutional claim on which relief can be granted." *Id.* Such a "purely legal decision" does not turn on whether actual facts support the plaintiff's allegations. *Id.* Rather, it turns on the facts as alleged in the complaint. Therefore, the decision "possesses the requisite finality for immediate appealability under the collateral order doctrine." *Id.* (citations omitted). A district court's "perceived need for discovery" does not affect this. *Id.* at 67.[11]

---

[11] Immediate appeal of denials of qualified immunity preserves the purpose of the doctrine, which is to protect government officials from the burdens of litigation and to enable them to perform their duties without the fear of liability so long as they do not violate clearly established rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). For officials currently serving in government, personal-liability damages suits carry "substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit [them] in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Even for former officials, personal-liability suits—particularly against cabinet-level officials, who are prominent targets for such litigation—deter "able citizens from acceptance of public office." *Harlow*, 457 U.S. at 814.

Other circuits have followed these principles. *See, e.g.*, *H.H. v. Moffett*, 335 F. App'x 306, 312 (4th Cir. 2009) (finding district court's refusal to rule on defendants' summary judgment motion raising qualified immunity in order to allow plaintiffs discovery an effective denial of qualified immunity and immediately appealable); *Summer v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (finding "district court's refusal to address the merits of defendant's motion asserting qualified immunity" a "conclusive determination for the purposes of allowing an interlocutory appeal"); *Klein v. Long*, 275 F.3d 544, 549 (6th Cir. 2001) (finding that "because the district court recognized that the defendants were presenting the affirmative defense of qualified immunity . . . and because the court denied defendants' motion for reconsideration/rehearing based on qualified immunity, the district court effectively denied defendants' claim of qualified immunity" (citation omitted)); *Wicks v. Miss. State Empl. Servs.*, 41 F.3d 991, 994-95 (5th Cir. 1995) (finding district court's order allowing discovery on defendant's qualified immunity claim immediately appealable where court had not held that facts as alleged by plaintiff state a violation of a clearly established constitutional right); *Valiente v. Rivera*, 966 F.2d 21, 23 (1st Cir. 1992) (finding district court's refusal to allow defendant to file a motion for summary judgment immediately appealable, even though district court did not deny qualified immunity defense, because "an asserted right not to stand trial is lost no less by a court's refusal to entertain a pre-trial immunity claim as by an erroneous denial on the merits"). *Cf. George v. Rehiel*, -- F.3d --, No. 11-4292, 2013 WL 6768151, at *5 (3d Cir. Dec. 24, 2013) ("Thus, because the district court held that the amended complaint sufficiently pled valid constitutional claims against the individual federal defendants, the practical effect of the district court's order was a denial of the defense of qualified immunity.").

As explained above, *supra* Part III, Defendants' qualified immunity defense raised the "purely legal" questions of whether Plaintiffs had pled facts alleging a violation of a clearly established constitutional right. Whether actual facts support or contradict Plaintiffs' well-pled factual allegations is irrelevant to that legal question. Accordingly, Defendants are entitled to a ruling on their qualified immunity defense before any investigation into the facts supporting or contradicting Plaintiffs' factual allegations occurs. And to the extent the factual information is requested to evaluate whether qualified immunity is proper here, that request "constitutes at least an implicit decision that the complaint alleges a constitutional claim on which relief can be granted." *X-Men*, 196 F.3d at 66.

Moreover, although this Court's Order is not directed to the individuals, it would have the same effect vis-à-vis the Defendants as an order permitting discovery in any litigation where defendants claimed qualified immunity. The Order goes directly to the merits of Plaintiffs' claims and, significantly, to Defendants' qualified immunity defense. It seeks the facts underlying Plaintiffs' allegations, including "the specific threat posed by . . . Anwar Al-Aulaqi," which would be the very purpose of discovery. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged information that is relevant to any party's claim or defense . . . ."). That the Order is directed to the United States instead of the Defendants does not lessen the burden and distraction of this litigation on them—the precise concerns qualified immunity is meant to address. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009). As the *Iqbal* Court explained, it is "no answer to these concerns" to stay discovery against defendants asserting immunity while allowing discovery to proceed against others because it is "quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or

slanted way that causes prejudice to their position." *Id.* Defendants would therefore be entitled to immediately appeal this Court's Order.

Furthermore, this logic also applies to Defendants' special factors argument. As the Supreme Court stated in *Wilkie v. Robbins*, a decision on the legal question of whether a cause of action exists—the core question of a special factors analysis—is appealable based on the "same reasoning" that allows for the immediate appeal of qualified immunity rulings. 551 U.S. at 550 n.4. And as explained earlier, *supra* Part III, any underlying facts implicated by Plaintiffs' allegations are irrelevant to Defendants' showing that under binding precedent, no cause of action exists in the context of Plaintiffs' claims. A request for such facts would therefore constitute an implicit finding that a *Bivens* cause of action exists in this context, an order appealable under *Wilkie*. In sum, any investigation into facts implicated by Plaintiffs' allegations is in error so long as Defendants' threshold legal defenses remain unresolved. And a resolution of those defenses against Defendants, which a request for factual information implies, is immediately appealable.

In light of these principles, the Court, before requiring the submission of classified information, should render a definitive ruling on Defendants' motion to dismiss, setting the stage for appellate review where warranted. At bare minimum, this Court should stay its Order pending resolution of the United States' present motion so that Defendants can determine whether to seek appellate review.

## CONCLUSION

The United States acknowledges the weighty legal issues at stake in this litigation. The United States, however, is not a party to this litigation and jurisdiction is lacking to require its participation in this matter. Moreover, whether this Court rules for or against the Defendants on

their pending motion, those individuals are entitled to a legal ruling on those issues before further factual proceedings in this matter. For these reasons and those stated above, the United States respectfully urges this Court to reconsider and vacate its Order, and to stay its Order pending resolution of the present motion.

Dated: January 10, 2014                          Respectfully submitted,

                                                 STUART F. DELERY
                                                 Assistant Attorney General
                                                 Civil Division

                                                 BRIAN HAUCK
                                                 Deputy Assistant Attorney General

                                                 RUPA BHATTACHARYYA
                                                 Director, Torts Branch

                                                 MARY HAMPTON MASON
                                                 Senior Trial Counsel
                                                 D.C. Bar No. 427461


                                                   /s/  *Paul E. Werner*
                                                 PAUL E. WERNER
                                                 (MD Bar, under LCvR 83.2(e))
                                                 Trial Attorney
                                                 United States Department of Justice
                                                 Torts Branch, Civil Division
                                                 P.O. Box 7146, Ben Franklin Station
                                                 Washington, D.C.  20044
                                                 (202) 616-4152 (phone)
                                                 (202) 616-4314 (fax)
                                                 E-mail: Paul.Werner@usdoj.gov

                                                 Attorneys for the United States